### LISKE v. LISKE.

(Supreme Court, Special Term, New York County. May 9, 1912.)

1. MARRIAGE (§ 58*)—ANNULMENT—INSANITY OF PARTY.

Code Civ. Proc. § 1743, provides that a marriage may be annulled for the insanity of one of the parties at the time thereof. Sections 1746–1748 provide when and by whom the action may be brought on behalf of the lunatic, but do not in terms limit the right to bring the action to the insane person. Held, as the Legislature did not expressly limit the right

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to annul for insanity to the insane person, it will not be presumed to have intended to so limit it, and an action by the sane spouse was proper.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 115–123; Dec. Dig. § 58.*]

2. WITNESSES (§ 209*)—COMPETENCY—PRIVILEGE OF PHYSICIANS—"PROFESSIONAL CAPACITY."

Insanity Law (Consol. Laws 1909, c. 27) § 90, makes it incumbent upon those in charge of state hospitals for the insane to make entries from time to time of the mental state of a patient. Section 93 provides that, upon return of a writ of habeas corpus upon application of an insane person or in his behalf, the medical history of the patient shall be in evidence. Section 45 provides for the care and treatment of indigent patients and the personal examination of their condition in such institutions. Held, that the relation arising by operation of law between a patient committed and the official physician in charge is not a professional relation contemplated by Code Civ. Proc. § 834, and, in an action to annul a marriage for insanity, testimony of a physician of a state insane hospital to which the alleged insane spouse was committed was admissible to prove her insanity.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 771; Dec. Dig. § 209.*

For other definitions, see Words and Phrases, vol. 6, p. 5658; vol. 8, p. 7766.]

Action by Harry Liske against Jennie Liske for annulment of a marriage on the ground of insanity. Judgment for plaintiff.

Taylor & Fatt (Isidore Fatt, of counsel), for plaintiff.

Algernon S. Norton, guardian ad litem (Percival H. Gregory, of counsel), for defendant.

GREENBAUM, J. [1] The evidence establishes that at the time of her marriage with the plaintiff the defendant was a lunatic. It is, however, contended by the guardian ad litem of the defendant that an action for annulment on the ground of lunacy is not available to the sane spouse. I cannot assent to this view. Section 1743 of the Code of Civil Procedure provides for the maintenance of an action to annul a marriage upon the ground that at the time of the marriage "one of the parties was an idiot or insane." In the absence of anything in the statute to the contrary, one would naturally assume that either party might maintain such an action. The obvious injury that might flow to the sane party from such an alliance and to society from the possible propagation of mentally defective progeny would at once suggest themselves as sufficient reasons why he should be released therefrom. It is also clear that cases might arise where it is desirable and important to annul the marriage in an action brought in behalf of the lunatic, because of interests of others in the estate of the lunatic in case of death, or because the interests of the lunatic might be best served by an annulment of the marriage. Accordingly we find that sections 1746, 1747, and 1748 of the Code of Civil Procedure provide for various contingencies when an action for annulment may be brought by or on behalf of the lunatic. There is nothing in the Code that in terms limits the right to bring such an action to an insane party. In the case of annulment upon the ground "that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

one or both of the parties had not attained the age of legal consent," it is provided in section 1744 as follows:

"But a marriage shall not be annulled at the suit of a party who was of age of legal consent when it was contracted."

This indicates that, where the Legislature intended to restrict the right to maintain an action for an annulment in this class of cases, it expressly confined such right to the party who had not reached the age of legal consent. It is safe to assume that, if the legislative purpose was to limit annulment actions in cases of lunacy to those brought by or on behalf of the lunatic, it would have been so provided in express terms.

[2] The guardian also urges that the testimony of one of the hospital physicians, by whom the insanity of the defendant was established, is inadmissible under section 834, and is not applicable in this case. The defendant was committed by order of the court to one of the state hospitals for the insane, and the witness was one of the medical physicians in charge of this institution. Section 90 of the Insanity Law makes it incumbent upon those in charge of the institution for the care and treatment of the insane to—

"make or cause to be made entries from time to time of the mental state, bodily condition and medical treatment of such patient during the time such patient remains under his care. * * *"

Section 93 provides for the issuance of a writ of habeas corpus upon application of the insane person, or some friend in his behalf, and directs that: '

"Upon return of such writ the fact of his insanity shall be inquired into and determined. The medical history of the patient as it appears in the case book shall be given in evidence, and the superintendent or medical officer in charge of the institution wherein such person is held in custody, and any proper person, shall be sworn touching the mental condition of such person."

Section 40 of the Insanity Law provides for the maintenance of state hospitals for the poor and indigent insane, among them being "Central Islip State Hospital," to which the defendant was committed, and with which the medical witness in this case was officially connected. Section 45 expressly provides for "the care and treatment of the patients," and for personal examination of the condition of each patient in these hospitals.

The public policy of the state demands the maintenance of such institutions and the care and treatment of the inmates, which necessarily involve their medical examination. I do not think that the relation arising by operation of law between a patient committed by legal process to a state institution for the insane and the official physicians in charge thereof is within the professional relation contemplated by section 834 of the Code of Civil Procedure, or that such section was designed to exclude the testimony of such official physicians, whose duty it is under the police power of the state to make physical examinations of irresponsible patients. The purpose of the protection being here absent, the legislative enactments as to the duties of medical

officers in the state institutions for the insane, and as to the making of public records relative to their condition, indicate that the testimony objected to was properly admitted.

Judgment of annulment for plaintiff.