LEON D. HOADLEY, Appellant, *v.* ELSIE R. HOADLEY, Respondent.

**Husband and wife — domestic relations — insanity — marriage voidable for insanity may not be annulled at the suit of the spouse who is sane.**

A marriage voidable for insanity may not be annulled at the suit of the spouse who is sane. (Authorities on the subject of annulment of marriage on ground of insanity of one of the parties, collated and discussed.)

*Hoadley* v. *Hoadley*, 217 App. Div. 799, affirmed.

(Argued January 24, 1927; decided February 23, 1927.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial

department, entered July 2, 1926, which unanimously affirmed a judgment in favor of defendant entered upon an order of Special Term granting a motion by defendant for judgment on the pleadings.

*Arthur J. Ruland* for appellant. The court now has the power to declare void a marriage contract where one of the parties thereto was a lunatic at the time it was entered into. (*Reed* v. *Reed*, 195 App. Div. 531; *Walter* v. *Walter*, 217 N. Y. 439; *Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456; *Marvis* v. *Marvis*, 216 App. Div. 291; *Jones* v. *Brinsmade*, 183 N. Y. 258; *Liske* v. *Liske*, 169 N. Y. Supp. 177; *Whitney* v. *Whitney*, 121 Misc. Rep. 485; *Smith* v. *Smith*, 112 Misc. Rep. 371; *Wightman* v. *Wightman*, 4 Johns. Ch. 343.) The party of sound mind may bring such an action to annul the marriage on the ground of insanity existing at the time of the marriage, but unknown to the plaintiff. (*Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456; *Roth* v. *Roth*, 97 Misc. Rep. 136; *Marvis* v. *Marvis*, 216 App. Div. 291.)

*Laverne M. Twining* for respondent. This action is purely statutory and the Legislature has defined the method of bringing such an action and by whom such an action may be brought. (*Stokes* v. *Stokes*, 198 N. Y. 301.) The sane party to a marriage contract cannot bring an action to annul the marriage and a motion for judgment on the pleadings will be granted. (*Reed* v. *Reed*, 106 Misc. Rep. 85; 195 App. Div. 531; *Walter* v. *Walter*, 217 N. Y. 439; *Severson* v. *Macomber*, 153 App. Div. 482; 212 N. Y. 274.)

CARDOZO, Ch. J.   Plaintiff was married to defendant in 1912. He says that she was then a lunatic, "wholly unable to understand the nature of the contract of marriage and its effects and consequences." Ignorant, he says, of the lunacy at the time of the marriage, he lived with her for ten years, till the fact of her lunacy was adjudged in appropriate proceedings. In the meantime two children

were born of the union. She is now, and for some years has been, an inmate of an asylum. He asks that nullity of the marriage be judicially declared.

The appeal brings up the question whether a marriage voidable for insanity may be annulled at the suit of the spouse who is sane. The question is a new one in this court. It has been the subject of conflicting decisions in the courts below. One Appellate Division in *Reed* v. *Reed* (195 App. Div. 531) and again in the case at hand, has held against the right of action. Another Appellate Division has reached a contrary conclusion (*Marvis* v. *Marvis*, 216 App. Div. 291). In accord with the latter ruling are some decisions at Special Term (*Liske* v. *Liske*, 135 N. Y. Supp. 176; *Whitney* v. *Whitney*, 121 Misc. Rep. 485).

At common law a marriage with a lunatic was not merely voidable, but void (1 Blackstone, Comm. 438; 2 Kent's Comm. 76; Pollock, Contracts [8th ed.], 95, 96; 19 Halsbury Laws of England, § 823; *Wightman* v. *Wightman*, 4 Johns. Ch. 343, 345; *Patterson* v. *Gaines*, 6 How. [U. S.] 550, 553, 592; *Rawdon* v. *Rawdon*, 28 Ala. 565; *Winslow* v. *Troy*, 97 Maine, 130; *Bell* v. *Bennett*, 73 Ga. 784; *Floyd County* v. *Wolfe*, 138 Ia. 749, 752; *Matter of Gregorson*, 160 Cal. 21; *Dunphy* v. *Dunphy*, 161 Cal. 87; *Elliott* v. *Gurr*, 1812, 2 Phillim. 16, 19; *Browning* v. *Reane*, 2 Phillim. 69). Sentence of nullity was unnecessary to avoid its obligation. Sentence, when pronounced, was the declaration of an accomplished fact. For " the good order and decorum of society," as well as for " the peace and conscience " of the parties, the chancellor might intervene to set aside an apparent obstruction to remarriage. He did this, however, in the exercise of his general jurisdiction, which was independent of any statute, to give relief in cases of lunacy or fraud (*Wightman* v. *Wightman, supra; Perry* v. *Perry*, 2 Paige, 501; *Griffin* v. *Griffin*, 47 N. Y. 134, 138, 139). Perhaps even in those days, the marriage, though severed without

sentence, was void *sub modo*, or in a secondary sense. There is support for the doctrine that it might be ratified by the concurrent action of the parties, and thus made valid from the beginning, after reason was restored (cf. Eversley Domestic Relations, pp. 74, 75, and *Wightman* v. *Wightman, supra*). A parallel for such a holding is to be found in the effect at common law of a marriage with a minor under the age of consent (1 Black. Comm. 437; Co. Litt. bk. 1, ch. X, pp. 123, 124; *Gathings* v. *Williams*, 5 Iredell's Law, 487; 44 Am. Dec. 57, note). There, also, sentence was unnecessary, yet confirmation was permitted. As long as this view prevailed, there was no room for a holding that the sane spouse and the insane one were on planes of inequality as suitors for relief. The conception of the marriage as void persists in England even now, though it is recognized as an anomalous departure from the rule as to the effect of lunacy upon other contracts of a lunatic not so found by inquisition. " Marriage, however, is a peculiar transaction, and the exceptional treatment of it in our law, though perhaps historically due to the influence, in ecclesiastical courts, of more general rules of civil or canon law, may well be justified on grounds of convenience " (Pollock, *supra*). Accordingly, the cases are many in which at the suit of a sane spouse the courts of England have pronounced a decree of nullity of marriage (*Durham* v. *Durham*, L. R. 10 P. D. 80; *Hunter* v. *Hunter*, L. R. 10 P. D. 93; *Cannon* v. *Cannon*, L. R. 10 P. D. 96; *Forster* v. *Forster*, 1923, 39 T. L. R. 658; *Jackson* v. *Jackson*, 1908 P. 308). Courts in the United States have followed the common law when they have been unfettered by a statute (*Little* v. *Little*, 13 Gray, 264). The question remains whether the same rule is to govern in jurisdictions where the effect of lunacy is to make the marriage voidable (cf. the query in *Wiser* v. *Lockwood's Estate*, 42 Vt. 720, 722).

The point of departure in this State is the opinion of Chancellor KENT in *Wightman* v. *Wightman* (*supra*).

The chancellor stated in adherence to the English rule that the marriage was void *ipso facto*, but that a decree was appropriate even if unnecessary. At the same time, he assumed in his opinion that the marriage might be ratified by approval or consummation after sanity had been restored. The suit was at the instance of a wife, who had contracted the marriage when insane, and sued to annul it upon recovering her reason. There was no occasion, therefore, to determine whether a reciprocal right of action would have been conceded to the husband.

A decade after *Wightman* v. *Wightman* a new form and content was given by the Revised Statutes to the law of marriage and annulment. Marriages that were incestuous or bigamous were declared to be " absolutely void " (2 R. S. 138, §§ 3, 5). Marriages contracted by persons incapable of contracting, or whose consent had been obtained by force or fraud, were thereafter to be void from the time their nullity was declared by a court of competent authority (Revisers' Notes, p. 87; 2 R. S. 139, § 4; cf. *Matter of Moncrief*, 235 N. Y. 390). At the same time competent authority was established and defined. " The chancellor, may, by a sentence of nullity, declare void the marriage contract, for either of the following causes, existing at the time of the marriage: (1) That the parties, or one of them, had not attained the age of legal consent: (2) That the former husband or wife of one of the parties was living; and that the marriage with such former husband or wife, was then in force: (3) That one of the parties was an idiot or lunatic: (4) That the consent of one of the parties was obtained by force or fraud: (5) That one of the parties was physically incapable of entering into the marriage state " (2 R. S. 142, § 20). The Domestic Relations Law (Cons. Laws, ch. 14) of our own day maintains the same distinctions. The one class of marriages is now characterized as void and the other class as voidable (D. R. L. §§ 5, 6, 7). Along with this division there came with the Revised Statutes a comprehensive regu-

lation of remedial rights. When annulment was sought on the ground that one of the parties was under the age of legal consent, it " may be brought by the parent or guardian entitled to the custody of such minor, or by the next friend of such minor," but in no case was a marriage to " be annulled on the application of a party who was of legal age at the time it was contracted," nor when " the parties, after they had attained the age of consent, had for any time freely cohabited as husband and wife " (2 R. S. 142, § 21). When annulment was sought " on the ground that a former husband or wife of one of the parties was living," it might be " declared void on the application of either of the parties, during the life time of the other, or upon the application of such former husband or wife " (§ 22). When annulment was sought on the ground of the idiocy of one of the parties, it might be declared void " on the application of any relative of such idiot, interested to avoid the marriage, at any time, during the life time of either of the parties " (§ 24). When annulment was sought on the ground of the lunacy of the parties, it might be " declared void at any time, during the continuance of that lunacy, or after the death of the lunatic in that state, during the lifetime of the other party to the marriage, on the application of any relative of the lunatic, interested to avoid the marriage " (§ 25). Where during the lifetime of both the parties to the marriage annulment was sought on the ground of idiocy or lunacy, and no suit for such relief was prosecuted by a relative, a sentence of nullity might be pronounced " on the application of any person admitted by the court to prosecute, as the next friend of such idiot or lunatic " (§ 26). The marriage of a lunatic might also be declared void, upon the application of the lunatic, after the restoration of reason; " but in such case, no sentence of nullity " was to be pronounced, if the parties had " freely cohabited as husband and wife, after the lunatic was restored to a sound mind " (§ 27). " Children of a marriage

annulled on the ground of lunacy or idiocy " were to be " entitled to succeed in the same manner as legitimate children, to the real and personal estate of the parent, who was of sound mind " (§ 28). A marriage might be annulled on the ground that the consent of one of the parties had been " obtained by force or fraud, during the lifetime of the parties, or one of them, on the application of the party whose consent was so obtained, or of the parent or guardian of such party, or of some relative interested to contest the validity of the marriage " (§ 30). A suit might also be maintained to annul a marriage " on the ground of the physical incapacity of one of the parties," but only "by the injured party against the party whose incapacity is alleged " (§ 33). A reciprocal right of action, though with certain limitations, was established by amendment in favor of the party who was incapable (Code Civ. Pro. § 1752; Civ. Prac. Act, § 1141). The plan in its main outlines has stood the tests of time. The provisions of the Revised Statutes were carried with little change into the Code of Civil Procedure (§§ 1742 *et seq.*) and thence into the Domestic Relations Law and Civil Practice Act (§§ 1132 *et seq.*), where they remain today. Changes of verbiage there have been. Scrutiny and comparison will show that in truth there has been little more. Civil Practice Act, section 1132, must be read in connection with Domestic Relations Law, sections 5, 6, 7, and so read is seen to be merely a re-enactment of 2 Revised Statutes, 142, section 20, with its grant of power to the chancellor to pronounce a sentence of nullity for enumerated causes. What the Revised Statutes meant in 1830, that the equivalent sections of the Practice Act now mean, if we lay aside the effect of specific amendments irrelevant to the case before us. The substance is still the same.

We think the right of avoidance has been limited to the lunatic and those privileged to act in the lunatic's behalf. The classification of the marriage as voidable, and not

absolutely void, would take us a certain distance on the road to that conclusion. Decisive it is not. The contract is voidable, but voidable by whom? The marriage can no longer be severed by a process of self-help. We have yet to say whether the privilege of avoidance is reciprocal and equal. The general rule, however, is that a contract voidable for insanity is not subject to avoidance at the suit of the party who is sane (1 Williston, Contracts, §§ 105, 250, 251, 254; *Atwell* v. *Jenkins*, 163 Mass. 362; *Blinn* v. *Schwarz*, 177 N. Y. 252; *Holt* v. *Ward Clarencieux*, Strange, 937; 2 Black. Comm. 291). The right to avoid is for the personal protection of the one who is disabled (*Carrier* v. *Sears*, 4 Allen, 336, 337; *Atwell* v. *Jenkins, supra*). Marriage may be an exception. One would think it was if one were to limit one's reading to what is said of marriage disabilities in the pages of Coke and Blackstone. "If a man of the age of fourteen marry a woman of the age of ten, at her age of twelve he may as well disagree, as she may, though he were of the age of consent; because in contracts of matrimony, either both must be bound, or equal election of disagreement given to both; and so *è convèrso*, if the woman be of the age of consent, and the man under " (Co. Litt. bk. 1, ch. X, pp. 123, 124). " If the husband be of years of discretion and the wife under twelve, when she comes to years of discretion, he may disagree as well as she may; for in contracts the obligation must be mutual; both must be bound, or neither " (1 Black. Comm. 436). One must remember in appraising these statements that they were made with reference to contracts then classified as void. There was no such thing in strictness as a right or privilege of avoidance in days when a void relation left nothing to be avoided. In Blackstone's time, if not before, the law as to contracts merely voidable was already on the modern basis (cf. 1732, *Holt* v. *Ward Clarencieux, supra*). One can find a statement of the doctrine in later pages of the Commentaries (1769, 2 Black. Comm. 291).

We start then with this, that the relation, whatever its incidents, is to be fitted to another mould. Contracts of marriage have been taken out of the void class and put into the voidable. One may argue with plausibility that the ordinary consequences implicit under the law of contract in the new classification are to follow from the change. The argument, though plausible, is inconclusive, at least in the absence of other evidences of intention. We find them in the law of remedies. The Legislature has said that the marriage may be annulled at the suit of relatives or friends, or at the suit of the incompetent after reason has been restored. This was declaratory or nearly so of common-law rules (19 Halsbury Laws of England, § 826, and cases there cited). It has *not* said that the marriage may be annulled at the suit of the party who is free from disability. There is a statutory list of the persons authorized to sue, without suggestion of a thought to amplify the number. One may not say that the function of the list was to provide the incompetent with champions who would otherwise be lacking. There were champions adequate for protection who were recognized already by the practice of the Court of Chancery (Halsbury, *supra;* Bishop, New Commentaries on Marriage, Divorce and Separation, vol. 2, § 527). If the list was not exclusive, there was no occasion for its making (cf. *Walter* v. *Walter*, 217 N. Y. 439). The notes by the revisers give confirmation to the view that exclusive it was meant to be. Speaking of their work, they say (p. 89, Revisers' Notes): " The cases are enumerated in which marriages are to be dissolved on account of the nullity of the contract, and the persons by whom and at what time application for that purpose is to be made." To say that parties are enumerated is to say by reasonable intendment that they are enumerated fully. Doubtless, the meaning of the statute would have been clearer if the section governing suits on the ground of lunacy had been made as explicit as the one governing suits where the

marriage is with a minor under the age of consent (2 R. S. 142, § 21; Civ. Prac. Act, § 1233). There we find a statement in so many words that nullity shall not be decreed at the suit of the party of legal age. The presence of this provision has been thought to suggest a doubt whether a reciprocal right of action is to be denied where the disability is lunacy. It is easy to exaggerate the significance of a single section or a single sentence in a section. Intention is to be gathered when all are viewed together in their grouping and succession. With the outlook thus widened, there is small escape from the conclusion that enumeration, though unaccompanied by negation of a correlative or mutual right, was intended to be final. Where so much has been set down, and with such meticulous precision, one finds it hard to believe that another rule was to govern as to anything left out (cf. §§ 30 and 33, now Civ. Prac. Act, §§ 1139, 1141). The work of the revisers was more than a partial survey of the field, a précis or a summary. It covered the whole ground. As to the subject matter treated, it was a comprehensive code of remedies.

Argument to the contrary is built to some extent upon provisions and omissions as to marriages that are wholly void. If there is any light to be gained from such a source, it is flickering and doubtful. The implication must be, if the nullity is absolute, that either party is entitled to the judgment of the court. Accordingly, we find that where marriages are void there are gaps in the scheme of remedies as framed by the revisers and thereafter carried into the codes. The statute is silent as to the parties who may sue to annul a marriage void for incest. It does indeed prescribe the parties where a marriage has been contracted during the life of another wife or husband (§ 22, now Civ. Prac. Act, § 1134). The object was to extend the right of action in such circumstances to the former husband or wife, when otherwise

the right might have been taken to be limited to parties to the contract subject to annulment. Moreover, marriage is not always void though there be another wife or husband, for it may have been contracted in good faith after an absence of five years, and may thus be merely voidable (2 R. S. 139, § 6). In brief the Legislature enumerated when it believed that enumeration would be useful. Apparently it had this belief in every case where a marriage is valid till annulled. It then addressed itself to the task of classifying the parties that would be competent to sue. We are hardly to suppose that after entering upon the task it meant to stop half way. The inference is rather that it went forward to the end. Whoever would maintain a suit must be able to show himself a member of one of the enumerated classes. There is ingenious argument to the contrary. We may concede that in such a tangle of statutes the quest for certitude is futile. We are to weigh the competing considerations in such scales as are available. We think the voidable character of the contract and the failure through all the revisions of the statute to include the sane spouse among those privileged to sue, must sway the balance for the view that the privilege unless granted is to be taken as denied. *Walter* v. *Walter* (217 N. Y. 439) dealt with a different situation, and may hardly be said to give support even by way of dictum to one view or the other. What was said in it is at least consistent with the judgment now announced.

There remain some considerations of public policy that are not to be ignored. If a sane husband may avoid a marriage for the insanity of his wife, the question will come up whether he may put his wife aside though her insanity was known to him when the marriage was contracted. The problem is one that has disturbed the English courts. There is a suggestion in one case that the husband in such circumstances would be held to be " estopped " to declare the marriage void (*Hancock* v.

*Peaty,* L. R. 1 P. & D. 335, 341). Possibly the same result might be reached through the doctrine that one coming into equity must come there with clean hands. There are statutes in some States whereby the sane spouse is expressly authorized to sue. It is noteworthy that they are coupled with conditions so framed as to carry with them an assurance of good faith. Thus in Minnesota, " no marriage shall be adjudged a nullity at the suit of the party capable of contracting, on the ground that the other party was * * * insane, if such * * * insanity was known to the party capable of contracting, at the time of such marriage " (*Lewis* v. *Lewis,* 44 Minn. 124, 125). There is a like statute in Mississippi (*Wilson* v. *Wilson,* 104 Miss. 347.) There is another in New Jersey (Compiled Statutes of N. J. p. 2021, subd. IV; *Daniele* v. *Margulies,* 95 N. J. Eq. 9). One may doubt whether the Legislature of New York, if it had supposed that such a right of action had been created or preserved, would have been less diligent to safeguard the remedy with appropriate restrictions. The trouble does not end, however, with the moment of the marriage. Problems difficult of solution will arise where the husband, though ignorant at the beginning, cohabits with the wife after her insanity is known. There is instinctive revolt against the notion that infirmity of the mind shall be used as a pretense for relief against satiety of the body. In this very case, plaintiff and defendant lived together for ten years. The insanity is alleged to have existed from the beginning, yet as late as six years after the marriage a child was born of the union. One would suppose that the cases must be rare indeed in which insanity so acute as to vitiate a marriage (cf. *Meekins* v. *Kinsella,* 152 App. Div. 32; *Lewis* v. *Lewis,* 44 Minn. 124; *Anonymous,* 4 Pick. 32; *Roether* v. *Roether,* 180 Wis. 24; *Forster* v. *Forster,* 1923, 39 T. L. R. 658; Bishop, New Commentaries on Marriage, Divorce & Separation, vol. 1, §§ 600, 601; 19 Halsbury, *supra,* § 825) could remain so

long concealed. Indeed, the plaintiff does not tell us when it was that the defendant's affliction was discovered. His allegation is merely this, that the affliction was not known at the moment of the marriage. If a marriage so contracted is voidable in its inception at the instance of the husband, shall later cohabitation with his wife after her insanity is known be taken as ratification or affirmance or inequitable conduct that will defeat the right of action? (cf. *Rawdon* v. *Rawdon*, 28 Ala. 565). The Legislature was careful to provide that annulment should be refused at the suit of the insane spouse if cohabitation continued after sanity was restored. It has said nothing as to the rights of the other spouse where there has been continued cohabitation after the insanity is discovered. In a code so precise and comprehensive would it have been satisfied to leave so much uncovered had it supposed that its enumeration would not be taken as exclusive? If so, the reciprocal right of action is first to be inferred by recourse to a process of construction, and then by a new process of construction is to be burdened with implied conditions. Uncertainties are not exhausted with the cases thus supposed. A spouse insane at the time of marriage may subsequently be restored to reason. If the wife, becoming sane, confirms the marriage, as she may, will judgment go for the husband to the effect that it is void? These and like queries suggest embarrassments and complications that may have seemed to the Legislature to find their readiest solution in the denial of a remedy as easily abused.

Much is said about hardship. Not all of it is of such a nature as to be heeded by the law. The theory of annulment on the ground of insanity is not that the sane spouse has made a bad bargain in getting an insane partner. The theory is that the insane partner to the union has manifested a consent that is unreal for lack of a contracting mind. The hardship might be as great in many of its phases if insanity supervened a month after

the marriage or a year. It might be as great if the diseased condition were one of body and not of mind. The law turns a deaf ear to these and like regrets.

When all deductions are allowed, there remains, none the less, in possible situations a residuum of hardship that may be thought to be special and peculiar. One of the parties to the marriage, though innocent of wrongdoing, is condemned to uncertainty as to his or her status unless the other party to the marriage or an appointed champion is willing to dispel the doubt. The statute relieves such uncertainty from the worst of its incidents by fixing the status of the children irrespective of any suit. They remain in any event the legitimate offspring of the sane parent. This has been so since the days of the Revised Statutes (2 R. S. 143, § 28). They may now be declared legitimate as to the other parent also (Civ. Prac. Act, § 1135). Uncertainty remains to some extent in respect of rights of property incidental to a marriage. It remains, aside from legal consequences, a foe to peace of mind, a disquieting reminder of an anomalous position. Considerations such as these may suggest an amendment of the statute that will extend the right of action. Good faith can be assured by coupling the extension with appropriate conditions.

Our concern at this time is with the statute as enacted. A code of remedies exists. The plaintiff is unable to bring himself within it.

The judgment should be affirmed with costs.

POUND, CRANE, ANDREWS and LEHMAN, JJ., concur; KELLOGG, J., not sitting.

Judgment affirmed.