ROBERT FRANCIS DAVIS *vs.* ANN SMOLEY DAVIS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 3d—decided November 8th, 1934.

*Michael J. Galullo,* with whom was *Theodore V. Meyer,* for the appellant (plaintiff).

MALTBIE, C. J.   Plaintiff brought this action seeking an annulment of his marriage to the defendant or a divorce.  The defendant made default of appearance, but upon the hearing the trial court refused the plaintiff relief.  It has found the following facts: The plaintiff and the defendant went on an automobile ride with several young people.  It was a joyous occa-

sion and to add to the excitement the defendant dared the plaintiff to marry her. The plaintiff accepted the dare, a license for the marriage was procured in New York State and the ceremony was at once performed by a justice of the peace there. Neither party intended at the time to enter into the marriage status. They returned to their respective homes after the ceremony and have never cohabited. Each was nineteen years old at the time. They were at the time of the marriage and still are residents of this State.

"Marriage is that ceremony or process by which the relationship of husband and wife is constituted. The consent of the parties is everywhere deemed an essential condition to the forming of this relation. To this extent it is a contract. But when the relation is constituted then all its incidents, as well as the rights and duties of the parties resulting from the relation, are absolutely fixed by law. Hence, after a marriage is entered into the relation becomes a status, and is no longer one resting merely on contract." *Allen* v. *Allen,* 73 Conn. 54, 55, 46 Atl. 242. Where parties have entered into a valid marriage, it may be dissolved only where one of the grounds of divorce specified in the statutes is present and only in accordance with the procedure established by the statutes. *Dennis* v. *Dennis,* 68 Conn. 186, 197, 36 Atl. 34. All the grounds of divorce specified, except fraudulent contract, are of such a nature that they can come into existence only after the marriage. While fraudulent conduct of a certain kind will render a marriage voidable, such fraud differs from that which vitiates ordinary contracts in that the party defrauded may not at his own election avoid the marriage, but it is held to be voidable only by a decree of the court. *Guilford* v. *Oxford,* 9 Conn. 321; *Gould* v. *Gould,* 78 Conn. 242, 247, 61 Atl. 604. Divorce, therefore, is a means provided for

the dissolution of a marriage which is valid until the court has decreed otherwise. But in addition to the right given to the Superior Court to grant divorces, the statutes contain a broad provision that "whenever from any cause any marriage shall be void, the Superior Court may, upon complaint, pass a decree declaring such marriage void." General Statutes, § 5188.

The essential claim of the plaintiff is that the parties never were in fact married, despite the ceremony which was performed, because of the lack of real consent on the part of either to enter into that relationship. We interpret the finding of the court that the parties were at the time of the marriage and still are residents of this State, to mean that at and before the bringing of the action they had their domicil here. Both parties were properly before the court. The power which the court was called upon to exercise was not to nullify a marriage which had in fact taken place, but to declare void a purported marriage, which, if the plaintiff's contention is correct, never did come into existence. We have no doubt that, if sufficient ground existed, the trial court had jurisdiction to pass such a decree. Amer. Law Institute Restatement, Conflict of Laws (Proposed Final Draft No. 4) § 122; *Cunningham* v. *Cunningham*, 206 N. Y. 341, 99 N. E. 845; *Hanson* v. *Hanson* (Mass.) 191 N. E. 673; *Haddock* v. *Haddock*, 201 U. S. 562, 570, 26 Sup. Ct. 525; *Foss* v. *Foss*, 105 Conn. 502, 136 Atl. 98.

There is, however, a distinction between a proceeding to secure such a decree and an action for a divorce. In the latter, whether a cause of divorce exists is to be determined by the law of the domicil of the parties. *Torlonia* v. *Torlonia*, 108 Conn. 292, 302, 142 Atl. 843. As regards the former, it is the generally accepted rule that, except in certain extreme cases, a marriage valid where the ceremony is performed is valid everywhere;

Amer. Law Institute Restatement, Conflict of Laws (Tentative Draft No. 3; Proposed Final Draft No. 4) § 128; 38 C. J. 1276; and hence in this case before a court in this State would be justified in decreeing a purported marriage performed in another State void, upon such ground as that here advanced, it would be necessary first to determine whether it was void by the laws of that State. Amer. Law Institute Restatement, Conflict of Laws (Proposed Final Draft No. 1; Proposed Final Draft No. 4) § 144; *Levy* v. *Downing,* 213 Mass. 334, 100 N. E. 638; *Hanson* v. *Hanson, supra.* It is true that in *Cunningham* v. *Cunningham, supra,* the New York Court of Appeals held that, where two persons domiciled in New York went to New Jersey to be married, immediately returned to New York, and continued their domicil there, the courts of New York could nullify the marriage, though it was valid in New Jersey, under a provision of the statutes permitting such relief where one party was under the age of consent. The statute, quoted in the opinion, provided that such a marriage should be "void from the time its nullity is declared by a court of competent jurisdiction;" and the situation presented was substantially similar to that where a divorce is granted upon the ground of fraudulent contract. Whether the marriage of the parties to this action is to be declared void because of a lack of consent to the contract, we hold must depend upon the law of New York, in which State the marriage ceremony was performed.

The New York courts of chancery early exercised a jurisdiction, apart from any statutory authority, to nullify marriages. *Hoadley* v. *Hoadley,* 244 N. Y. 424, 426, 155 N. E. 728; *Walter* v. *Walter,* 217 N. Y. 439, 441, 111 N. E. 1081; *di Lorenzo* v. *di Lorenzo,* 174 N. Y. 467, 473, 67 N. E. 63. But for many years the statutes of that State have governed the exercise of

such a power by its courts. They now provide that marriages between persons within certain degrees of consanguinity or, with certain exceptions, where a husband or wife by a former marriage is still living, shall be void and that certain other marriages shall be void from the time their nullity is declared by a court of competent jurisdiction, in an action which may be brought only as provided in the civil practice act and rules of civil practice. 1 McKinney's Consolidated Laws of New York, Domestic Relations, §§ 5 to 7, amended, 1934 Cumulative Supplement. Under these provisions, the Court of Appeals has said that "an action to annul a marriage is purely statutory;" *Stokes* v. *Stokes,* 198 N. Y. 301, 304, 91 N. E. 793; "when the statutes expressly state the powers of the courts, define how actions to annul marriages may be brought and prohibit such actions to be brought otherwise, the court may no longer assert its original jurisdiction and add to those . . . authorized by statute to maintain such actions." *Walter* v. *Walter, supra.* But these statements do not quite reach the question before us. There may be no power in the courts of New York to grant relief to parties who have gone through a marriage ceremony which was so lacking in some essentials as not to constitute a real marriage, yet that marriage may be in fact void. This distinction is well illustrated by the fact that, until recently, in most jurisdictions a form of contract between two parties might so fail to meet some requirement of law as to be in reality no contract, yet the courts were without power so to declare until one party or the other brought an action claiming a breach of its provisions or seeking other affirmative relief. We must ask, then, not whether the courts of New York could nullify such a marriage as the one we are considering,

but whether it was under the law of that State in fact void.

While the New York statute states, among the causes for which the courts of that State may nullify a marriage, one where either party is incapable of consenting to a marriage for want of understanding, such a situation as that before us is not included in any of the causes enumerated. The first question which confronts us is, then, are the provisions of the New York statute such that, under them, in every case not mentioned by them as making a marriage void or voidable, a valid marriage results wherever the parties go through a marriage ceremony. Such a case as that before us differs from that presented by the statutes providing the grounds upon which a divorce may be granted because, where the parties have once entered into a valid marriage, an enumeration in a statute of the grounds upon which that marriage may be dissolved is naturally to be taken as an exclusion of all other grounds. *Allen* v. *Allen, supra,* p. 56. So if a statute regulates the conditions under which a marriage entered upon under certain specified conditions is to be deemed void, the statute will be deemed to evince the legislative intent that unless the conditions are present the marriage is valid. See *Hoadley* v. *Hoadley, supra.* When, however, a statute gives to the courts the power to nullify a marriage upon certain grounds, in so far at least as a lack of the essentials for the very formation of the relationship is concerned, it may fairly be regarded as an attempted enumeration of the situations which will arise, which may, to a greater or lesser extent, prove in actual experience to be faulty. A purported marriage lacking such an element as consent of the parties is, unless some statutory provision governs, void, and needs no decree of the court to make it so. *Wightman* v. *Wightman,* 4 John.

Ch. (N. Y.) 343, 345; *Hoadley* v. *Hoadley, supra,* p. 426; *Earle* v. *Earle,* 126 N. Y. Sup. 317, 320; *Pettit* v. *Pettit,* 93 N. Y. Sup. 1001, 1003; *Freda* v. *Bergman,* 77 N. J. Eq. 46, 48, 76 Atl. 460; *Waymire* v. *Jetmore,* 22 Ohio St. 271. Though the New York statutes are silent upon such a situation as that here presented and the New York courts are without power to nullify such a marriage, it does not necessarily follow that the marriage was valid under the law of that State.

While marriage, once constituted, is a status, it is the outgrowth of a contract and, to quote again from *Allen* v. *Allen, supra,* "the consent of the parties is everywhere deemed an essential condition to the forming of this relation." "Marriage, by the law of all Christian countries, is based upon the consent of the parties. There are therefore two legal steps in the creation of the status in a common law State: the mutual consent to the marriage, forming the contract of marriage; and the legal creation of the relationship predicated by some law upon the valid consent of the individuals concerned to take each other as husband and wife." Amer. Law Institute Restatement, Conflict of Laws (Proposed Final Draft No. 1) § 129, Comment (*b*). "Consent is absolutely requisite to matrimony." 1 Blackstone, Comm. p. 438; *di Lorenzo* v. *di Lorenzo, supra,* p. 472.

It is an accepted principle that where two parties go through the form of entering into a contract, both understanding that there is no intent thereby to incur legal obligations, no contract is in fact created. 1 Williston, Contracts, p. 23; 1 Page, Contracts, § 80. In a case very similar to the one before us, Chancellor Zabriskie applied this principle to the marriage contract in the following language: "Mere words without any intention corresponding to them, will not make a

marriage or any other civil contract. But the words are the evidence of such intention, and if once exchanged, it must be clearly shown that both parties intended and understood that they were not to have effect. In this case the evidence is clear that no marriage was intended by either party; that it was a mere jest got up in exuberance of spirits to amuse the company and themselves. If this is so there was no marriage." *McClurg* v. *Terry*, 21 N. J. Eq. 225; see also *Crouch* v. *Wartenberg*, 86 W. Va. 664, 104 S. E. 117; *S. C.*, 91 W. Va. 91, 112 S. E. 334; Keezer, Marriage & Divorce, § 57. It has been said that where, after such a marriage, cohabitation has followed, "the interests of society become involved and in many cases prevent the courts from interfering except in extreme cases." *Warren* v. *Warren*, 199 N. Y. Sup. 856, 858. We do not, however, in this case need to consider the extent to which that view is sound, for in this instance the parties separated after the ceremony and never have cohabited.

We find no decision of the New York courts declaring its common law as applied to such a situation as we are considering. Cases like this are naturally rare, because not often will people, even young in years, so trifle with such a vital relationship as that of marriage. But so fundamental is the principle that there can be no marriage without the consent of the parties and so accepted is the rule that, though parties go through the form of a contract, if both understand that neither intends to assume a contractual obligation, no real contract is created, that we deem it a part of the general common law that in such a situation as this no marriage ever came into existence. In the absence of some contrary decision of the New York courts, we assume that this is as true in that State as we hold it to be in ours. *Hanson* v. *Hanson* (Mass.)

191 N. E. 673; *Artman* v. *Artman,* 111 Conn. 124, 129, 149 Atl. 246; *American Woolen Co.* v. *Maaget,* 86 Conn. 234, 243, 85 Atl. 583. Upon the facts found by the trial court, the purported marriage between the parties to this action was void under the law of New York, and the court should have decreed it to be void.

We would be reluctant to seem to countenance conduct which treats so lightly one of the most fundamental of human relationships, both as regards the individuals immediately concerned and the interests of society. But where it clearly appears that two young people, by their foolish and unconsidered conduct, have gotten themselves into such a situation as arises out of the performance of a marriage ceremony between them without the intent on the part of either to enter into the marriage relationship, and cohabitation has not followed, we have no doubt that it is in the public interest legally to declare them to be unmarried rather than to leave them under the shadow of a relationship which is but an empty form. A petition for the annulment of a marriage on this ground requires of the court hearing it great caution and demands clear proof. It calls for the exercise of that discretion described in *Dennis* v. *Dennis,* 68 Conn. 186, 197, 36 Atl. 34: "The forms of the law of divorce should never be allowed to minister to the caprices of fickle-minded persons, or to the revenges of the disappointed or vindictive; and least of all to the passions of the incontinent. Nor under any circumstances should they be used in fraud of the statute allowing divorces, nor of the court. To the end that any and all attempts to use the forms of the law of divorce for any of the purposes indicated, shall be discovered and defeated, all courts possessing divorce jurisdiction are vested with a discretion. A wise discretion should always be exercised in administering the law of divorce, lest its

spirit be disobeyed by a too narrow adherence to its letter." But if the court is satisfied that the petitioner has fairly proven a situation within the principle we have stated, it should by its decree declare the marriage to be void.

There is error, and the case is remanded with direction to enter judgment for the plaintiff.

In this opinion the other judges concurred.