## ALVERA BOHAN OLMSTEAD
*vs.*
## JOHN EDMONDSON OLMSTEAD

| Superior Court | New Haven County | File No. 63600 |

MEMORANDUM FILED JULY 6, 1943.

*FitzGerald, Foote & FitzGerald,* of New Haven, for the Plaintiff.

*Thomas R. Robinson* (Appointed), of New Haven, for the Defendant.

INGLIS, J. This is an action for a divorce or to annul a marriage on the ground of lack of consent.

The plaintiff and defendant had known each other for many years. In March, 1940, the defendant was inducted into the then selective service and is still in the armed forces stationed somewhere in the Pacific area. Between March, 1940, and December, 1941, the plaintiff and defendant had corresponded with each other occasionally.

On or about December 24, 1941, the defendant arrived home for a few days furlough, expecting soon to be shipped overseas. He was with the plaintiff for a short while on Christmas day and again on December 26th.

On the evening of December 27th, the defendant arrived at the plaintiff's home in Wallingford at about seven o'clock in the evening in the company of Mr. and Mrs. Hunt Fitz-gerald. Mr. Fitzgerald was also in service and home on a furlough. The two couples went out for a ride in a car.

While riding around the defendant proposed to the plain-tiff that they get married. Mr. and Mrs. Fitzgerald joined in urging her to consent. The gist of the arguments used seems to have been that Olmstead was, as the plaintiff de-scribes it, "a pathetic figure." He was about to depart for overseas and needed such encouragement as a marriage would give him. Accordingly it was the plaintiff's patriotic duty to give him that encouragement. The plaintiff finally yielded to these arguments and agreed to the marriage. A waiver was procured from the judge of probate, a license from the town clerk, and the couple were married by a minister in Walling-ford.

The wedding occurred at about nine o'clock in the evening. The two couples then went to the plaintiff's home and told her parents. The parents, of course, took the position that the marriage was ill-advised, and the whole group sat up all the rest of the night talking about the situation.

The following day the plaintiff and defendant and Mr. and Mrs. Fitzgerald spent in New York City attending theatres. They arrived back in Wallingford in the late evening. The plaintiff went to bed in her own room. The defendant slept

in a separate room and left at two o'clock the following morning. Since then the parties have not seen each other but have corresponded by mail infrequently. They have never had sexual intercourse.

At the time of the marriage the plaintiff was 25 years of age. She had been employed for some time as a beautician and was a young lady of better than average intelligence. This action was not started until February of 1943.

The plaintiff claims that when she entered upon the marriage she intended never to live with the defendant and that that is such lack of consent as will bring her within the law set forth in the case of Davis vs. Davis, 119 Conn. 194.

In spite of her testimony as to her intent, the circumstances attending her marriage were such as to indicate that, although she may not have given much thought to the future, she certainly had no specific intent not to live with her husband at any time. The fact is that although she entered upon the marriage hastily and without such consideration as such a serious matter should have received, nevertheless she knew and realized that it was a marriage that she was entering into. The reasons of sympathy for the defendant and a desire to encourage him which motivated her were, in her mind at the time, adequate to justify the marriage, and it was clearly her intent to enter a marriage contract which would create the marriage status between her and the defendant, whatever the incidents of that status might be. In other words, this is not a case in which the marriage was merely one of words. It was not entered into merely as a jest or a lark, as in the Davis case. When the plaintiff and defendant exchanged their vows they understood that they were entering into a marriage in a real sense and they intended that theirs should be such a marriage. It was only after sober deliberation, induced probably by the advice of her parents, that the plaintiff concluded that the marriage might have been a mistake. Marriages ought not to be dissolved for such a reason and the law does not countenance an annulment under such circumstances.

It is found that in this case there was no lack of consent to the marriage contract on the part of either the plaintiff or the defendant.

Judgment may enter denying a divorce and an annulment.