# CHARLESTON.

LUCILE CROUCH v. FLOYD M. WARTENBERG.

Submitted September 14, 1920. Decided September 21, 1920.

1. MARRIAGE—*Equity May Annul Marriage of Doubtful Validity.*

   A court of chancery, by virtue of its ordinary equity powers, possesses jurisdiction to entertain a suit for the purpose of annulling a marriage supposed to be void, or as to the validity of which some doubt may exist. (p. 666).

2. SAME—*Validity of Marriage Depends Largely on Validity of Contract.*

   The status of marriage has its inception in contract, and its validity depends largely upon the validity of the contract upon which it is based. (p. 667).

3. SAME—*Mutual Consent is Necessary to Validity of Marriage Contract.*

   Mutual consent, which is of the essence of all ordinary contracts, is necessary to the validity of the marriage contract as well, and such consent implies not only willingness to go through the ceremony of marriage, but also an intention to enter into the marriage status and assume the obligations, duties, rights and privileges which characterize it. (p. 667).

4. SAME—*By Legal Ceremony, but Entered into in Jest, May be Annulled.*

   A marriage ceremony, though actually and legally performed, when entered into in jest, with no intention of entering into the actual marriage status and all that it implies, and with the understanding that the parties are not to be bound thereby, or assume towards each other the relation ordinarily implied in its performance, including the duties, obligations, rights and

privileges incident thereto, and followed by no subsequent
acts or conduct indicative of a purpose to enter into such re-
lation, does not constitute a legal basis for the marriage status,
and the pretended marriage may be annulled in equity at the
suit of either party.   (p. 668).

Case Certified from Circuit Court, Cabell County.

Suit by Lucile Crouch against Floyd M. Wartenberg. De-
murrer to bill, interposed by the divorce commissioner, sus-
tained, and ruling certified.

*Demurrer overruled.*

*Deegan, Boman & Taylor,* for plaintiff.

LYNCH, JUDGE:

The bill held by the circuit court insufficient on demurrer in-
terposed by the divorce commissioner, the ruling thereon being
certified for review by this court, prays for the annulment of a
marriage ceremony performed between plaintiff and defendant
in the manner authorized and permitted by the laws of this
state, and also for an injunction against interference with
plaintiff or her molestation by defendant.

As appears from the allegations of the bill, the ceremony had
its inception in jest without serious wish, desire or intention to
enter into a matrimonial contract valid and binding upon the
parties thereto or either of them, and they did not intend or
contemplate consummation of such a contract or the assumption
of the duties, obligations, rights, privileges and consequences
usually pertaining to the marriage relation, and have not since
the ceremony done or performed any act indicative of an in-
tention to ratify or consummate the pretended marriage, and do
not now desire its consummation or the exercise of such rights,
obligations, duties and privileges.   The bill further alleges that
plaintiff was persuaded and induced to go through the mar-
riage ceremony by the false and fraudulent representations of
defendant, believed and relied on by plaintiff, without knowl-
edge of their falsity, accompanied also by the assurance that the
performance of the ceremony was to be treated as ineffectual
for any purpose, and the only purpose intended was to avoid
detriment to defendant's business and loss of the respect of his
friends and associates, which would result from plaintiff's re-

fusal to go through the ceremony. The 'marriage license was obtained and the ceremony performed without the knowledge or consent of the parents of the plaintiff, with whom and under whose guardianship she as a minor then resided and since has continued to reside, notwithstanding the pretended marriage to defendant.. These allegations and others of like kind and character the bill amplifies with the perspicuity requisite to constitute good pleading and with sufficient certainty to warrant annulment of the marriage vows, if otherwise plaintiff is entitled to the relief prayed by her. Wherefore the only question is whether the marriage ceremony so performed with the apparent, though, according to the bill, without the actual, consent of the parties thereafter to be affected and bound thereby until dissolved in a divorce proceeding or otherwise, is legally valid under the circumstances presented.

There is no doubt of the right and power of a court of equity, at the request of either party to the contract, to entertain a suit for the purpose of affirming or annulling a marriage supposed to be void, or as to the validity of which any doubt exists, and counsel do not question such right. *McClurg* v. *Terry,* 21 N. J. Eq. 225; *Clark* v. *Field,* 13 Vt. 460.

According to the allegations of the bill, the responses made to the questions propounded as part of such ceremonies, as "understood, intended and contemplated both by your complainant and the said defendant at the time the said ceremony was performed, * * * · were to impose no marital duties or obligations and confer no marital rights" upon either of them, and "the relation of husband and wife was not by virtue of such ceremony to be assumed, undertaken or contracted for."

While no animadversion upon such frivolity probably could be too severe, such condemnation now would avail nothing and be utterly useless. Yet it is relevant to remark that vain, meaningless, false and fraudulent replies to inquiries made to test the sincerity of the parties are especially important upon the question as to the assumption of marital rights, privileges, obligations and duties. The object of the entire ceremony is to bind the parties by a sacred covenant, one thereafter not to be trifled with. Good faith, honest motives, frankness and candor are essential to the validity of any contract, whatever

the object may be, and the books are replete with cases avoiding contracts of all kinds where these elements are lacking. Happily, there are but few decisions annulling marriage vows on these grounds, not because courts have refused to grant·relief in appropriate cases, but because it is seldom that such frivolity occurs in a matter of such serious concern to the parties interested.

As Bishop in his work on Marriage, Divorce & Separation, vol. 1, § 296 says: "The status of marriage is entered through the door of a contract not essentially differing from other contracts. It is that circumstance without which this status is never superimposed upon the parties." And in section 298 he says: "The forms are not a substitute for it (mutual consent to enter into the status). They are but modes of declaring and substantiating it—matters of publicity or evidence. If they are gone through with without the added consent, the marriage is a nullity, both as to the parties and to third persons." To constitute a valid marriage, the parties must possess the legal qualifications, and enter into a mutual agreement or consent to the marriage relation as contemplated by law, "uninfluenced by fraud or error in any particular deemed fundamental, or by duress." Spencer, Law of Domestic Relations, § 37.

According to these and other authors and decisions dealing with the subject, mutual consent and bona fide agreement of the parties, freely given and with the intention of entering into a valid status of marriage, are fundamental and essential elements, and without them the marriage is invalid (*McClurg* v. *Terry*, 21 N. J. Eq. 225; *Clark* v. *Field*, 13 Vt. 460; *Dorgeloh* v. *Murtha*, 92 Misc. 279, 156 N. Y. Supp. 181; *Ford* v. *Stier*, L. R. (1896) Probate 1; *Hall* v. *Hall*, 24 Times L. R. 756; 1 Bishop, Marriage, Divorce & Separation, §§ 337-338; Spencer, Law of Domestic Relations, § 82; 26 Cyc. 832-833); unless consummated by cohabitation as husband and wife, or otherwise ratified or confirmed. *Brooke* v. *Brooke*, 60 Md. 524.

In *McClurg* v. *Terry, supra,* the New Jersey court considered facts and circumstances very similar to those alleged by plaintiff in this·cause, and as particularly appropriate here we quote as follows from page 227: "Mere words, without any intention corresponding to them, will not make a marriage or

other civil contract. But the words are the evidence of such intention, and if once, exchanged, it must be clearly shown that both parties intended and understood that they were not to have effect. In this case the evidence is clear that no marriage was intended by either party; that it was a mere jest got up in the exuberance of spirits to amuse the company and themselves. If this is so, there was no marriage."

And in *Dorgeloh* v. *Murtha,* cited, likewise involving similar facts, the New York Court states the rule thus: "The law considers marriage in the light of a civil contract as to its inception. In the marriage contract, the same as in any other, consent is a necessary element. Consent, which is of the essence of all ordinary contracts, is necessary to the validity of the marriage contract. The minds of the parties must meet in one, common intention. Mere words, without the intention corresponding therewith, will not make a marriage or any other civil contract. * * * It is quite true that there was a formal ceremony; but it is also patent from the evidence that there was no intention whatever on the part of either plaintiff or the defendant that it should be considered as a valid and legal marriage. * * * It was a mere subterfuge, gotten up for the purpose of enabling the plaintiff to obtain a marriage certificate which would be of assistance to her in obtaining a theatrical engagement."

As neither plaintiff nor defendant, according to the allegations of the bill, gave their free and willing consent to be bound by the ceremony, or assume towards each other the relation ordinarily implied in its performance, or exercise the duties, obligations, rights and privileges incident to the relation, and have not since, done any act or performed any such duties or obligations, or exercised such rights and privileges, thereby or otherwise indicating a purpose so to be bound, there appears no reason for refusing to order the annulment of the, pretended marriage, and thereby remove any impediment that might othewise exist by way of embarrassment of any kind or character as the legitimate consequences of the imprudent conduct of the parties, provided, of course, the facts so alleged are proved. Section 8, ch. 64, Code.

As the fraudulent representations or conduct of either party,

when proved, vitiate, a contract, whatever the subject of the negotiations may be, so such representations and conduct have the same force and effect upon the validity of a contract of marriage; certainly so if not consummated, and perhaps also even after its consummation, unless the plaintiff has in some manner waived the fraud or done or performed some act operating as estopped against subsequent reliance upon it in a court of equity. The application of this doctrine is so general and universal as not to necessitate further discussion.

For these reasons we enter of record our disapproval of the circuit court's ruling upon the demurrer, and hold the bill legally sufficient, and direct certification of the result to that court, as required by statute.

*Reversed.    Demurrer overruled.*