### In re MO-SE-CHE-HE'S ESTATE.
### RED EAGLE et al. v. ROGERS et al.

No. 28399.    Nov. 12, 1940.

Rehearing Denied Dec. 10, 1940.

*107 P. 2d 999.*

J. M. Humphreys, of Pawhuska, and D. E. Johnson, of Fairfax, for plaintiffs in error.

Hook & Thomas, of Kansas City, Mo., Henry R. Duncan, of Tulsa, H. P. White, of Pawhuska, and L. R. Stith, of Fairfax, for defendants in error.

RILEY, J.    This is an appeal from an order and judgment refusing to admit the will of Mo-se-che-he, a full-blood Osage Indian allottee, to probate.

On January 10, 1933, Mo-se-che-he, who was an unmarried, full-blood Osage Indian woman, made and executed a will, wherein she named Victor Griffin, Red Eagle, a minor, Louis Red Eagle, Peter Kenworthy, and May Rusk Red Eagle and Bessie Rusk Crawford beneficiaries, devising and bequeathing her entire estate to said beneficiaries. All of the persons named in said will as beneficiaries are Osage Indians.

Mo-se-che-he died on or about June 30, 1934.

The will was approved by the Secretary of the Interior about June 6, 1935.

On June 12, 1935, May Red Eagle for herself and as next friend of Victor Griffin Red Eagle, and Bessie Rusk Crawford, filed a petition for the probate of said will in the county court of Osage county. Hearing of the petition was set for July 15, 1935.

Six separate protests against allowance of the will to probate were filed by persons claiming to be heirs of deceased and entitled to inherit in the absence of a will. Nearly all the protests so filed alleged mental incapacity, duress, and undue influence, and all contained the additional ground that decedent, Mo-se-che-he, was an unmarried woman at the time she executed the will, and thereafter was married, and that said marriage had not been dissolved, and that her husband survived her, and that said marriage revoked the previously executed will under the laws of the state of Oklahoma.

Albert Fierro, otherwise known as Jack Rogers, filed what was denominated an answer to the petition for probate of the will, and petition for appointment of administrator. Therein he alleged in substance that he and Mo-se-che-he entered into a common-law marriage about December 1, 1933, which marriage was never dissolved, and that thereafter, on May 19, 1934, they entered into a ceremonial marriage which was never dissolved, and which continued down to the death of Mo-se-che-he, which occurred on or about June 30, 1934.

He then alleged that he was the surviving husband of decedent and entitled to inherit the whole of the estate under the law of descent and distribution, and that the purported will was without force or effect as against his right to inherit; that as such surviving husband he had first right to be appointed administrator, and prayed that letters of administration issue to Albert Fierro and Leah Duncan.

Proponent filed answer to all the protests and the petition of Albert Fierro, consisting of general denial, and also asserting that the laws of the state of Oklahoma do not govern in the estates of full-blood Osage Indians, and that the devolution or distribution of the estates of such Indians is controlled and governed by the Act of Congress of April 18, 1912 (37 Stat. L. 88), and particularly section 8 of said act, which provides:

"Any adult member of the Osage Tribe of Indians not mentally incompetent may dispose of any or all of his estate, real, personal, or mixed, including trust funds, from which restrictions as to alienation have not been removed, by will in accordance with the laws of the state of Oklahoma: Provided, that no such will shall be admitted to probate or have any validity unless approved before or after the death of the testator by the Secretary of the Interior."

They then alleged that the purported marriage between Mo-se-che-he and Albert Fierro was invalid; that Fierro was a white person and not entitled to inherit from a full-blood Osage Indian woman.

Hearing was had in the county court resulting in findings of fact in favor of proponents on the questions of mental capacity, duress, undue influence, and a finding that Mo-se-che-he was a single woman when she executed the will offered in probate and thereafter married Albert Fierro, and that by said marriage the will was revoked. Order denying the admission of the will to probate was entered.

May Red Eagle and Victor Griffin Red Eagle, by J. M. Humphries, his guardian ad litem, gave notice of appeal to the district court on both questions of law and of fact.

Appeal bond was signed and filed by May Red Eagle, by J. M. Humphreys, her attorney, and Victor Griffin Red Eagle, by J. M. Humphreys, his guardian ad litem, as principals, and United States Fidelity & Guaranty Company, as surety.

After transcript was filed in the district court, motions were filed by some of the protestants to dismiss the appeal. One of the grounds was that Bessie Rusk Crawford did not join in the notice of appeal. Another was that the bond was signed by J. M. Humphreys, an attorney of this state, and it was for that reason void.

These motions were overruled.

Countermotions to strike the motions to dismiss were filed by proponents upon the alleged ground that the parties filing said motions were not shown to be persons entitled to so inherit from Mo-se-che-he.

Trial of the issues was had in the district court resulting in findings and order substantially the same as in the county court. The order denying the will to probate is upon the sole ground that the will executed by Mo-se-che-he while a single woman was revoked by her subsequent marriage to Fierro.

Proponents appeal and filed motions to dismiss the appeal upon the same grounds as such motions contained in the district court.

The motions to dismiss in this court are assailed by proponents on the same grounds as were like motions in the district court.

The principal question involved is whether the will executed by Mo-se-che-he while a single woman was revoked by her subsequent marriage.

In view of the conclusions we have reached on this principal question as hereinafter set out, we deem it unnecessary to consider the motions to dismiss the appeal and countermotions to strike. Dismissal of the appeal in the district court or in this court would leave the findings and order of the county court in full force. Affirmance of the order of the district court would have the same effect. We prefer to decide the principal question on its merits rather than on the technical questions raised in the motions.

The trial court found that the will was executed in due form; that Mo-se-che-he was mentally competent and that there was no duress, coercion, nor undue influence. These findings are supported by the evidence.

The court further found as follows:

"* * * That upon what might be designated as the merits the will in contest would be entitled to be admitted to probate if no other questions were involved.

"But, the court further finds as a matter of fact, and as a matter of law, that on the 23rd day of March, 1934, the claimant, Jack Rogers, alias Albert Fierro, obtained an annulment of a marriage which had been previously consummated between himself and one Hattie Logan Davis; that at that time the court had jurisdiction of the parties to annul said marriage; that the annulment of the marriage was a legal proceeding, and said marriage was annulled in said proceeding, and declared void.

"The court further finds that thereafter on the 19th day of May, 1934, Jack Rogers, alias Albert Fierro, claimant herein, and said Mo-se-che-he, Osage Allottee No. 34, the deceased, were legally married and lived together as husband and wife up to and until the death of said Mo-se-che-he.

"The court further finds that said Mo-se-che-he was an unmarried woman at the time of the execution of the will here in contest, and remained an unmarried woman until May 19, 1934, when she married Jack Rogers, alias Albert Fierro, as aforesaid; that the marriage of said Mo-se-che-he to said Jack Rogers, alias Albert Fierro, as aforesaid revoked the will here offered for probate, by operation of law, and the court further finds, as a matter of law, that said will offered for probate, having been revoked by operation of law, is not entitled to be admitted to probate."

Section 1563, O. S. 1931, 84 Okla. Stat. Anno. § 108, provides:

"A will executed by an unmarried woman is revoked by a subsequent marriage, and is not revived by the death of her husband."

In Revard v. Revard, In re Revard's Estate, 178 Okla. 524, 63 P. 2d 973, we held:

"We are of the opinion that there can be little doubt but that Congress in enacting section 8, of the Act of Congress of April 18, 1912 (37 Stat. at L. 86, 88), intended to adopt the general scheme of the statutes of Oklahoma pertaining to wills."

By section 8 of the Act of Congress of April 18, 1912, Congress did not limit the applicability of the laws of the state of Oklahoma, but in effect made applicable all the laws of the state pertaining to disposition of property by will.

In Soderstrom v. Bonner, 180 Okla. 355, 71 P. 2d 117, it is held:

"An adult member of the Osage Tribe of Indians not mentally incompetent, in the disposition of his property, is bound by the general laws pertaining to wills in Oklahoma, and the disposition to those members of his family or relatives which is provided in said laws."

It would seem that if the general laws of the state of Oklahoma pertaining to wills are applicable to disposition of property under said Act of Congress, section 1563, supra, relating to the revocation of wills, is also applicable.

In Phillips v. Smith et al., 186 Okla. 536, 100 P. 2d 249, it is held that a will executed by a full-blood Choctaw Indian, in accord with the laws of the state of Oklahoma, and approved as required by act of Congress, was revoked by the execution of a later will which by its terms purported to revoke all former wills, although the later will was never approved in the manner required by the federal law.

Where the general law of the state relating to wills is by act of Congress made applicable to disposition of the estate of restricted Indians, that part of the law of the state relating to revocation of wills applies alike to members and non-members of the Indian Tribe.

It is generally held under statutory provisions like or similar to the provisions of section 1563, supra, that a will executed by an unmarried woman is revoked by her subsequent marriage. 68 C. J. 838, § 538; Large v. Diercken (In re Berger's Estate) (Cal.) 243 P. 862; In re Booth's Will (Ore.) 61 P. 1135, 66 P. 710; Missions v. Nelson, 72 Ill. 564.

A statutory provision of this kind is the declaration of an absolute rule, and such a marriage operates from the instant of its consummation as a revocation of the will.

There is clear, absolute, and uncontradicted evidence that Mo-se-che-he and Jack Rogers (Albert Fierro) entered into a ceremonial marriage contract in conformity with law, on the 19th day of May, 1934, and that they lived together as man and wife until the death of Mo-se-che-he. The trial court so found. We must and do hold that the will of Mo-se-che-he was revoked unless said marriage was void.

Plaintiffs in error contend that the marriage between Mo-se-che-he and Jack Rogers (Albert Fierro) was void for the reason that Jack Rogers had theretofore been married to Hattie Logan Davis, and that his marriage to Hattie Logan Davis had not been legally terminated, and for that reason Rogers (Fierro) was not competent to enter into a legal marriage relation with Mo-se-che-he.

The uncontradicted evidence is, and Jack Rogers (Fierro) admits, that he and Hattie Logan Davis were married under form of law at Sedan, Kan., on or about November 8, 1933. It is conceded that Hattie Logan Davis had not been divorced from her former husband for a period of six months at the time she married Jack Rogers (Fierro) at Sedan, Kan.

It is also conceded that within the six-months period Jack Rogers (Albert Fierro) commenced an action in the district court of Osage county against Hattie Logan Davis, to procure a decree of annulment of the Sedan marriage,

and caused summons to be issued and served upon said Hattie Logan Davis, and thereafter, on the 23rd day of March, 1934, obtained a decree declaring said marriage null and void.

Plaintiffs in error contend that the district court of Osage county had no jurisdiction to enter a decree of annulment of said marriage on the grounds set forth in the petition and the facts thereby presented. That is, they contend the statutes of this state do not make a marriage entered into within six months after a divorce of one of the parties void, and that a marriage of that kind is not void, but merely voidable, and may not be dissolved other than by decree of divorce. And further that the statute providing for annulment of a marriage does not make a subsisting marriage of one of the parties grounds for annulment.

In this connection may be noted chapter 13, S. L. 1937. Section 1 of said act provides:

"A judgment or decree heretofore rendered by a court having jurisdiction of the parties, annulling a marriage and/or granting a divorce, on the grounds that one of the parties had been previously married and divorced and said divorce decree had not become final, is hereby validated."

The Legislature, insofar as it had power so to do, has validated the decree of annulment of the marriage of Jack Rogers (Fierro) and Hattie Logan Davis. However, under our view, applicability of the above statute to the present cause is immaterial. The uncontradicted evidence is that both parties to said marriage have accepted said decree of annulment as valid in that both of them have been twice married to other persons since said decree was entered.

Plaintiffs in error contend that the decree of annulment is utterly void and that it so appears on the face of the judgment roll.

The position of plaintiffs in error is that the district court of Osage county was without jurisdiction to enter the decree of annulment because the petition of plaintiff in that action does not bring the cause of action within the provisions of section 677, O. S. 1931, 12 Okla. Stat. Ann. §1283, relating to annulment of marriage. Said section is:

"When either of the parties to a marriage shall be incapable, *from want* of age or understanding, of contracting such marriage, the same may be declared void by the district court in an action brought by the incapable party. * * *"

It is said that the court was without jurisdiction (1) because the plaintiff therein was not the incapable person; (2) because he was not incapable from want or age or understanding, and (3) because the court had no jurisdiction over an annulment on grounds not specifically named in said section.

Defendants in error contend that a court of chancery, by virtue of its ordinary equity powers, possesses jurisdiction.

In this connection plaintiffs in error cite the rule stated in 38 C. J. 1348-1349, to the effect that the jurisdiction to annul a marriage is, as a general rule, conferred by statute, and generally on courts of equity. "But a court of chancery, in the exercise of its ordinary powers, and without the authority of statutes may take jurisdiction of a suit to annul a marriage where the ground alleged is one upon which equity gives relief in respect to contracts generally, * * * in case of fraud, error, duress, mental incapacity, or want of consent generally. In other cases, however, as where the marriage is alleged to be void by reason of a subsisting marriage * * * the court is powerless to grant annulment, in the absence of express authority."

Defendants in error, in support of their contention, cite the rules as stated in 9 R.C.L. 396:

"* * * Courts of equity in this country have, as a general rule, assumed inherent jurisdiction to decree the annulment of marriages for certain causes

233

which under the law as administered in the ecclesiastical courts were ground for a divorce a vinculo matrimonii."

And in 10 R.C.L. 341:

"In a few jurisdictions, however, the inherent authority of equity to declare a marriage null and void in a suit between the parties themselves has been affirmed, independently of any statutes regulating the subject of marriage and divorce, many of the cases assuming jurisdiction on the ground that marriage is a civil contract, and that courts of equity have always entertained suits to set aside contracts on the ground of fraud."

In Crouch v. Wartenburg (W. Va.) 104 S. E. 117, 11 A.L.R. 212, it is held:

"A court of chancery, by virtue of its ordinary equity powers, possesses jurisdiction to entertain a suit for the purpose of annulling a marriage supposed to be void, or as to the validity of which some doubt may exist."

In Browning v. Browning (Kan.) 130 P. 852, it is said:

"The fact that the statute enumerates certain grounds for annulling a marriage does not imply that no others exist."

Therein it is also said in effect that incapacity by reason of the existence of a prior valid marriage would be grounds either of annulment or divorce.

In McClurg v. Terry, 21 N. J. Eq. 225, wherein the annulment was sought upon the ground that a marriage ceremony, legal in form, was entered into in jest, it was held:

"The Court of Chancery has the power to declare a marriage void, when performed in jest, and where it was not intended to be a contract of marriage."

In that case the relief sought was not upon a statutory ground for annulment. Such also was the case in Crouch v. Wartenberg, supra.

An early case to the same effect is Clark v. Field, 13 Vt. 460.

Dorgeloh v. Murtha, 156 N.Y.S. 181, is a case where a marriage, valid in every respect as to formal statutory requirement, was annulled without specific statutory authority. In respect thereto, the court said:

"I am satisfied that this court, under its broad, general equity jurisdiction, has inherent power to decree a dissolution of this marriage."

In Jones v. Jones (Fla.) 104 A.L.R. 1, it is said:

"The marriage of a man and woman, where one of them has a husband or wife by a prior marriage, who is then living and undivorced, is generally held to be absolutely void, and not merely voidable, and being a nullity, no judicial decree is ordinarily necessary to avoid same."

And:

"In divorce matters modern civilization strongly condemns the harsh doctrine of ab initio sentences of nullity. As a consequence, marriages are considered as being either void or voidable, depending upon the circumstances involved. A marriage is considered voidable rather than void, though prohibited by law, when it is possible for the parties to subsequently ratify it when there has been removed a disabling or voiding impediment which was unknown to both parties at the time the invalid marriage was originally contracted, especially where no public policy pertaining to the situation appears to present any obstacle thereto superior to all considerations of private utility."

It has often been held that where a person marries within six months after procuring a divorce, such marriage may ripen into a valid common-law marriage where the parties continue to live together as man and wife after the expiration of the six-months period. But this is purely because of the conduct of the parties after the expiration of the six months.

The general rule is that such a marriage has no validity whatever during the time within which either party is prohibited by law from marrying any person except the other party to the divorce. This has been the universal

234

holding of this court with the possible exception of Plummer v. Davis, 169 Okla. 374, 36 P. 2d 938. Therein it is held:

"Where wife remarries and dies within six months from her divorce decree, her second marriage is voidable and not void, and unless the marriage is set aside prior to her death by proper proceeding, her second husband will inherit husband's share."

It is there stated that such marriage is not void, but voidable. It is indicated, however, that such marriage may be set aside by proper proceedings within said six-months period.

In this case Jack Rogers did commence an action in the district court to annul and set aside his marriage to Hattie Logan Davis. He commenced the action and obtained personal service within the six-months period, and later obtained a decree setting aside and annulling said marriage.

The uncontradicted evidence is that both parties to said decree took advantage thereof and recognized its validity and both have twice remarried since the decree was entered.

Under the authorities above cited, we are of the opinion that the district court under its general jurisdiction granted by the Constitution had power and authority to enter the judgment and decree, and that said decree is not void on the face of the record.

Plaintiffs in error contend that Jack Rogers (Albert Fierro) is not a competent person to protest the will for the reason that he has not shown himself interested in the estate of Mo-se-che-he, and entitled to inherit in the absence of a will, in that he is a white person and not entitled to inherit as the surviving husband of a full-blood Osage Indian woman.

That question is not before us at this time.

Determination of heirship is for the county court when the matter of final distribution comes on in regular course of administration. At that time Fierro may or may not be able to show his right to inherit. The judgment and order denying admission of the will to probate is affirmed.

BAYLESS, C. J., and OSBORN, CORN, GIBSON, HURST, DAVISON, and NEFF, JJ., concur. WELCH, V. C. J., dissents.