ANNA STAPLEBERG *vs.* HERMAN D. STAPLEBERG.

Third Judicial District, Bridgeport, April Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Adherence to the strict, technical meaning of words and the precise letter of the language is not required in construing a statute, where the remedy therein provided would by such construction be defeated or rendered useless.

General Statutes, § 4562, provides that whenever a marriage is for any cause void, the Superior Court, upon complaint, may so declare, and may thereupon make such order "concerning alimony, as it might make in a proceeding for divorce between such parties if married." In an action under this statute it was *held:*—

1. That while "alimony" in its strict and technical sense implied the existence of a valid marriage between the parties, the word was obviously used by the legislature, in the statute in question, in its broader and more popular meaning, to signify an allowance to the woman of part of the man's property; that the purpose of extending the remedy applicable in divorce proceedings to cases of void marriages was clear, and the statute should therefore be construed in furtherance of such purpose.

2. That the power to grant such allowance was not restricted to cases in which the woman was without fault, or less in fault than her partner.

3. That in determining how much of the man's estate—not exceeding one third—should be assigned to the woman, the trial court, while bound to consider all the conditions and attending circumstances, was nevertheless clothed with a wide discretion.

4. That in awarding $1,100 in the present case such discretion had not been abused.

Submitted on briefs April 21st—decided June 14th, 1904.

SUIT to have a marriage declared void, and to obtain alimony, brought to and tried by the Superior Court in Fairfield County, *Gager, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

The plaintiff and defendant, of German birth and related to each other in the degree of uncle and niece, and both at the time residents of Danbury in this State, were married in the State of New York on June 16th, 1899. Each knew

of their relationship, and each was ignorant of any law forbidding their marriage and believed that they could lawfully marry.  The law of New York declares marriages between uncle and niece incestuous and void.  After the marriage ceremony the parties, believing that they were lawfully married, returned to Danbury, where they thereafter lived as husband and wife upon a small farm until about May 1st, 1902, when the plaintiff, having for the first time learned that she had no right to live with the defendant as his wife, ceased to cohabit with him, and as soon as she could thereafter make the necessary arrangements left his house and immediately brought this action.  Some time prior to said May 1st, 1902, the defendant became aware that his marriage was illegal.  He so told the plaintiff, and asked her to tear up the marriage certificate.  She, not being familiar with the English language, asked what " legal " meant. He replied that it meant that if he died she could not get any of his property.  She thereupon refused to tear up the certificate, because she at the time believed that as long as she had the certificate she was married to him, and relying thereon she continued to cohabit with the defendant until on or about May 1st, 1902, when, having occasion to visit a lawyer, she learned the truth concerning her situation, with the result described.

During the time the parties lived together the family consisted of the couple, a son of the defendant by a former marriage, and one or more boarders.  No child was born to them.  The plaintiff did the general housework, at times took care of, milked, fed and bedded five cows, aided in the care of three horses, and raised poultry and made butter. The expenses paid by the defendant for the plaintiff's clothing and other matters, outside of ordinary living expenses, amounted to less than $50.  From time to time during the period of their cohabitation the plaintiff let the defendant have various sums of her own money, amounting in the whole to $1,200, of which sum $700 has not been repaid. The value of the defendant's property, which consists of real estate, is not less than $10,000.  Substantially all the

Stapleberg v. Stapleberg.

property the plaintiff owns is two small houses, from which she receives an income of from $14 to $20 per month when rented, and she is obliged to depend in part—as before her marriage—upon a son by a former husband for her support. It did not appear that during the period of the parties' cohabitation the defendant acquired any property or made any profit from his farm over and above his living expenses.

The complaint contained allegations of undue influence on the part of the defendant, inducing marriage. These allegations the court found untrue.

The defendant filed an answer, and a cross-complaint in which he claimed judgment declaring said marriage void.

*Eugene C. Dempsey* and *William H. Cable*, for the appellant (defendant).

*Charles W. Murphy*, for the appellee (plaintiff).

PRENTICE, J. The court below having found that the plaintiff and defendant had entered into a void marriage contract, that the defendant was the owner of real estate of the value of $10,000, and that $1,100 was a just and equitable portion of his estate to assign to the plaintiff, and other incidental facts, rendered judgment declaring said marriage void and that the defendant pay the plaintiff $1,100 as alimony.

No question is made as to the power of the General Assembly to authorize such judicial action. The defendant's main contention, expressed in several forms in the reasons of appeal, is to the general effect that such authority has not been given. Whatever authority there may be is contained in § 4562 of the General Statutes, where it is provided that " whenever from any cause any marriage is void, the superior court may, upon complaint, pass a decree declaring such marriage void, and may thereupon make such order in relation to any children of such marriage, if such there be, and concerning alimony, as it might make in a proceeding for a divorce between such parties if married."

The defendant claims that this statute provides in terms for the allowance of alimony and nothing else, and that as the allowance of alimony assumes the existence of a legal marriage, there is no justification in the statute for the court's action in the present case.

It is doubtless true the common-law use of the term alimony restricted its application to allowances made by and to persons between whom there had been a lawful intermarriage, and that careful legal definitions so describe it. It is suggestive in this connection, however, to observe that never, we believe, during the long history of our divorce legislation did the word alimony appear in the sections providing that allowances might be made to a wife in, or in connection with, divorce proceedings, until the Act of 1895, Chap. 127, provided for alimony *pendente lite ;* and to-day the allowance which may be made, as an incident of divorce granted, is described, as it has been, as an assignment to the wife of a part of the estate of the husband. In indices, judicial opinions, and legal parlance, this assignment has been termed alimony. The statutes which have authorized it have, however, never in terms so called it. The word alimony, we believe, first appears in our legislation in the year 1877, when two statutes were enacted in which it was used. One was the original of the section under review; the other an Act authorizing attachments. It is clear, therefore, that when the General Assembly in 1877 authorized, and now in said § 4562 authorizes, decrees concerning alimony as in proceedings for a divorce, it used the term alimony not as a word having a strict legal meaning and in that meaning of it, but as referring to the familiar assignments to a woman out of the estate of a man, after the manner long provided where they had in fact intermarried.

When the Act of 1877 conferred the judicial power to make such assignments in favor of a woman out of the estate of a man between whom there had been a form but no substance of marriage, we are bound to assume that the legislature intended to accomplish something, and that it did not wilfully make an utterance which was both senseless and

Stapleberg v. Stapleberg.

purposeless. It is not, for instance, to be believed that the legislature meant to use the term alimony in such a sense that the substance of its enactment would be that whenever a man and woman have entered into a void marriage contract the court may so declare, and make an assignment to the woman out of the estate of the man if they were legally married. Again, if the language of § 4562 is to be construed as authorizing only grants of alimony as between those who have been legally married, it is difficult to see how anything is added to the already existing power. The ancient provision is ample to meet any such situation. The language of the Act of 1877, now § 4562, unmistakably indicates that the General Assembly was attempting to provide a new remedy, or rather to extend an old remedy to a new situation. That situation is tersely stated in the opening language of the present section, to wit : " Whenever from any cause any marriage is void." The relief provided for was plainly intended to meet this situation, to be appropriate to it, and to accomplish results. In construing the legislative language, therefore, we are bound as far as we may to give effect to the legislative intent and advance the remedy manifestly sought to be supplied. To this end, adherence to the strict meaning of words and the precise letter of the language is not required. *Rawson* v. *State*, 19 Conn. 292, 299; *Clark* v. *Hoskins*, 6 id. 106, 110; *Richards* v. *Eno*, 23 id. 413, 416; *Bishop* v. *Vose*, 27 id. 1.

The defendant, however, suggests that the new statute need not be rendered wholly inoperative, since its operation may be confined to actions to annul marriages on the ground of fraud, deceit, undue influence, and like causes rendering the marriage voidable only. This contention finds little support in the sweeping language of the Act. Furthermore, if we turn to the original Act of 1877 we find that it read : " Whenever from incapacity to contract, consanguinity, or other cause, any marriage is void," etc. The revisers in 1888 sought to compress the Act, and hence the present more terse language ; but clearly they had no intention to change the law and are not presumed to have done

so. *State* v. *Neuner*, 49 Conn. 232, 235; *State* v. *Geer*, 61 id. 144, 150; *Westfield Cemetery Asso.* v. *Danielson*, 62 id. 319, 322; *Campbell's Appeal*, 76 id. 284. Plainly the legislation was not only intended to apply to situations like the present, where the marriage was void for consanguinity and void therefore *ab initio*, but was particularly addressed to them.

The defendant further claims, that as alimony in cases of divorce can only be awarded to the innocent and prevailing woman out of the estate of her guilty partner, the same rule must by analogy be applied to the so-called alimony which may be awarded under § 4562, and that therefore the present case does not satisfy these conditions, since the parties are equal in guilt. We think it clear that the power given to the court, in cases of incestuous marriages, to make assignments in favor of the woman out of the estate of the man, is not limited to cases where the woman is without fault or not equally in fault with her partner. There is no such limitation expressed, and no good reason is suggested why there should be one. In 1702 an Act to prevent incestuous and unlawful marriages and punish the offenders was first passed. That Act gave the Superior Court the power " to assign unto any woman so separated, such reasonable part of the estate of her late husband, as in their discretion the circumstances of the estate may admit." This provision was by the Revision of 1821 taken from its former connection and incorporated into the Act concerning divorces, where it then appeared for the first time, the words "so divorced" being substituted for " so separated," and the limitation to one third being added. Since that time it has been retained in that connection unchanged in substance. In *Allen* v. *Allen*, 43 Conn. 419, counsel sought to draw an argument from this history, there more fully outlined, to the effect that women divorced for their own fault might have the statutory assignment made to them. The court held otherwise, but in its opinion assumed that the provision in the original Act was one of which any woman who had been a party to an incestuous marriage might have had the benefit.

The court said (p. 426) that "it doubtless was quite just and politic that when legal separation followed an incestuous marriage, both parties being equally guilty, each should have a share of the property," but that " when the provision is transplanted and made a part of a plan for granting a divorce for the fault or the guilt of one party only, the reason for the division of property wholly fails."

In view of this conclusion upon the defendant's main proposition, the assumption which forms the minor premise, to wit, that the parties in this case stand before the law equal in guilt and with equally unclean hands, needs no consideration.

In close relation to the claim last discussed is another: that as the court failed to find that the allegations of fraud and undue influence contained in the complaint were established, and did find the allegations of the cross-complaint true, judgment should have been rendered in favor of the defendant upon the cross-complaint, with the result that the latter and not the plaintiff would be the prevailing party, to the deprivation of the plaintiff of her right to alimony.

This claim requires no further consideration than such as is involved in our former discussion, and in the single additional observation that the material fourth paragraph of the cross-complaint, which alleges that upon the discovery by the defendant that said marriage was void the plaintiff and defendant separated and have not lived together, was disproved as far as the defendant was concerned.

The court, following the language of the finding, " allowed to the plaintiff the sum of $1,100 in the nature of alimony, as a reasonable compensation to her for the pecuniary benefits derived by the defendant due to the supposed marriage relation existing between them, and is based in part upon money paid out by the plaintiff to and for the benefit of and at the solicitation of the defendant, and not repaid, and also in part upon her services to him." We have already had occasion to notice the peculiar language in which our statute has always been couched. Courts are not empowered to set out alimony, but to assign to the woman a part of the man's

estate, not exceeding one third. Section 4562, as we have observed, operates to extend the power to make these assignments of estate to situations like the present. The power of the court is the same in kind as in the case of divorces, that is, it is authorized to assign to the woman a part, not exceeding one third, of the man's estate. In making its decision as to the extent of that part it is bound to consider all the conditions and attending circumstances, for the purpose of determining what, upon the whole, seems fair and equitable. In making this determination the court necessarily has a wide discretion and is not held within any narrow and inflexible lines. In the present case we fail to discover any abuse of that discretion.

There is no error.

In this opinion the other judges concurred.