JOSEFI MILLS, Petitioner, v. JOHN MILLS, Respondent.

Domestic Relations Court of the City of New York, Family Court, Queens County, May 21, 1946.

*Edward Devlin* for petitioner.

*John Mills* respondent in person.

PANKEN, J. Under section 92 of the New York City Domestic Relations Court Act (L. 1933, ch. 482), creating the Domestic Relations Court of the City of New York, this court is empowered to require a respondent chargeable with the support of his wife and child to make provision for them. Subdivision (1) of section 92 of the Domestic Relations Court Act provides that support for a wife may be ordered " as justice

requires having due regard to the circumstances of the respective parties.''

The measure of such support is determinable by the financial ability of the respondent and whether he abandoned the wife or the abandonment is chargeable to the wife. In the first instance, the husband would be required to provide support according to his financial ability, his means; and in the second instance, the basis of support would be measured by the amount necessary to hold the public harmless, to prevent the petitioner from becoming a public charge.

The evidence in this case presents a situation which is not uncommon, but nevertheless, a situation upon which the courts have not expressed themselves. I know of no determination by this court reduced to an expression of opinion by any of my colleagues, as to what the law is, nor do I know at this time of any opinion rendered by another court construing the law, applicable in a situation such as is developed by the evidence presented herein.

To require the respondent to contribute to the support of his wife according to his means in this case, at this time, might be wholly academic; to require a husband to contribute to the support of his wife according to his means the court must find as a fact that there has been an abandonment by him.

The evidence before me does not disclose an abandonment by the respondent of his wife. An actual abandonment is not contended for by the petitioner or her counsel. If anything could be contended for by the petitioner or her counsel, it would be that there has been a constructive abandonment.

Subsequent to the marriage ceremony they never lived together as man and wife. They have lived as man and woman prior thereto. That was a meretricious relationship. Adverting to what I have already enunciated, an abandonment may be constructive; and where there is a constructive abandonment the wife would be entitled to support according to the means of her husband. Was there a constructive abandonment in this case? That question must be resolved upon the evidence submitted.

I always questioned very seriously the possibility of permanence of a marriage which was the result of, for want of a more euphonious word, the term '' coercion '' is used. The law interpreted in response to public policy in this State will regard marriage as voluntarily entered upon. That presumption must be overcome by evidence. That, however, is a matter to be passed upon by a forum other than this court.

It is against public policy to question a marriage between parties, sanctioned by the law, either entered upon by way of a civil ceremony, or sanctioned by law, entered into by religious ceremony. The marriage must be consummated. That has been the law from time immemorial. Consummation of a marriage is not always the ceremonial. However, I hold in this case that there was a consummation of the marriage. The marriage was entered upon to legitimatize the child, which was born some time after the respondent had, as he testified, agreed to be married to the petitioner, and he actually married her in a ceremony, as he testified in consequence of fear that he might be court-martialed had he failed to do so. Both the respondent and the petitioner were mature persons at the time of marriage. Both were over the age of thirty at the time of the marriage. The petitioner knew the possible consequences of the meretricious relationship upon which she entered. The respondent also should have known the possible consequences of that meretricious relationship.

Though public policy will require the courts to preserve the sanctity of a marriage, and properly so, I don't think that public policy goes the distance of requiring this court to find that there was in this instance an abandonment by the husband of his wife, when the marriage was the result of coercion, even though the coercion might have been predicated upon a just claim. The law does not sanction coercion; indeed, the law frowns upon any coercive act. Though the coercive act is for the accomplishment of a lawful purpose it should not be the foundation upon which to base a claim.

I cannot find in this case an abandonment; nor can I, from the evidence in the case, find that there was a constructive abandonment. The fact that, though the woman sought the companionship of her husband or invited him and mayhap even pleaded with him to go to live with her, he refused to accede to her pleas cannot be looked upon or regarded as a constructive abandonment, in the circumstances as disclosed in this case.

It is unfortunate that cases of this kind and situations such as the one disclosed as existing between these parties are as numerous as they are. " Shot-gun " marriages are partially doomed before they are entered upon, to explode and ultimately disappear. Only rarely do they work out advantageously to the people involved or to the community as a whole. Most often they are detrimental both to the parties involved and to the community, because the community has to take over

the care of the children in many instances. We are confronted here with a fact and not a theory. It would be straining the law to spell out a constructive abandonment by the husband of this wife. To be sure, he was a sinner. Possibly he still is. She was a consenting sinner, too. Neither was very young. They were both over the age of thirty when they entered upon this relationship.

If the petitioner is entitled to support at all from the respondent, it is solely on the basis of saving the community from supporting her. She would be therefore entitled to support only on the basis of being a public charge, or likelihood of becoming a public charge. I am loath to find otherwise, and I think the law and morals support my viewpoint.

Insofar as the child is concerned, it is legitimate. It was born in wedlock. All children born in wedlock are presumed to be legitimate, and it is a healthy construction of the law. It is sound socially and it is sound juridically. The presumption of legitimacy inures to the benefit of the innocent and that should be defended and protected.

I am satisfied from the evidence in this case, and from observation of the child, that there is no question but that the respondent is the father of the child. I am glad that he feels that he should make provision for the support of the child.

The respondent earns approximately $40 weekly. He is able to contribute to the support of his wife and child the sum of $15 weekly. So ordered.