## " Irma Lester ", Petitioner, *v.* " Irwin A. Lester ", Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, April 1, 1949.

*Jack E. Levine* for petitioner.

*Harvey K. Mackler* for respondent.

* Names used herein are fictitious for the purposes of publication.

PANKEN, J. Judge GRAY, speaking for the Court of Appeals in the case of *di Lorenzo* v. *di Lorenzo* (174 N. Y. 467, 472) said, " The free and full consent, which is of the essence of all ordinary contracts, is expressly made by the statute necessary to the validity of the marriage contract ", despite the fact that as Judge GRAY said, " it is true that marriage contracts are based upon considerations peculiar to themselves and that public policy is concerned with the regulation of the family relation, nevertheless, our law considers marriage in no other light than as a civil contract."

A marriage procured in consequence of coercion or fraud will be regarded *ab initio* as if the marriage had not been entered into at all. Marriages procured by coercion or in consequence or fraud may in a court having jurisdiction be annulled. An annulment of a marriage is a determination that the conventional relationship of man and wife had not been established despite and in face of a marriage ceremony.

Marriage presumably is a relationship into which two individuals enter upon freely and voluntarily. Environmental influences, and that means education, conventions at a given time and in a given place, and economic status of the parties sometimes control the character of the freedom and the voluntary attitudes of the parties entering into the marriage relationship. To that extent the freedom exercised in a marriage contract is limited.

Under our form of government the right of the individual is supreme. He may not be coerced to do that which the law does not permit or which society does not sanction. Rights are limited to the extent that their exercise impinges upon the rights of others. Individual liberty and desires are limited when in their exercise they trespass upon the rights of others, the community of individuals; freedom of the individual is circumscribed to avoid and prevent hurt to those amongst whom and with whom one lives. That defines public policy.

The welfare of most is the purpose of all democratic government. In authoritarian regimes or in absolute governments the welfare of the governing group is made by them supreme and so the welfare of the many is disregarded; the many do not participate in establishing governmental policies and the dictates of government. Public policy reflects the need of the many, nevertheless, protecting the few. It is the expression of the need and the will of the majority and the conservation of the rights of the minority. That is public policy as conceived in and is part of democracy.

The State and the community are interested in and concerned with the institution which marriage creates. Man enters a marital relationship to perpetuate the species. The family is the result of marital relationship. It is the institution which determines in a large measure the environmental influences, cultural backgrounds, and even economic status of its members. It is the foundation upon which society rests and is the basis for the family and all of its benefits.

The character of the culture and civilization, the morals, conventions, law and relationship in the life of a community are what man develops. The community, man, has a vital interest in the marriage institution, for the present generation is father to the succeeding one, and that generation will be the determinant as to the advance of civilization, morals, law and relationships of the future. The character of the succeeding generation is influenced by the permanence and decency of the family institution. Public policy enlists and commands the need of regulation of marriage and the course that the family institution is to pursue. Though marriage is a free institution to be entered into freely and voluntarily because of the community's interest in that institution, the State has a right to regulate and insist upon decency and morals in its maintenance.

Agreements entered into antenuptially between parties which do violence to the accepted conventions and laws of the State and the community are unenforcible as a matter of public policy.

The petitioner and the respondent were married according to law. The respondent claims that no valid marriage was entered into; that it was never intended to be a real marriage. He introduced in evidence two documents bearing upon his claim. One exhibit in part reads, " Know all men by these presents that whereas I. B. can no longer bear to continue her relationship with I. A. L. in the same way as in the past, but at the same time is not willing to give him up; and whereas she is desirous of re-establishing herself in the good graces of her relatives and friends; and whereas, considering all things, this cannot be done unless said relatives and friends are given the impression that I. A. L. has married her; and whereas, for personal reasons, she can no longer continue staying with her sister, B. G., but must seek a place of her own; for these and other reasons important only to herself * * * " and then the document proceeds to set forth that that was the reason and purpose for the marriage between the parties. Another portion of the same document reads, " I. A. L. hereby states, and I. B. hereby admits,

that the pretended and spurious marriage contract and ceremonies, and simulated marriage relationship, is taking place against I. A. L.'s wishes, and only because of serious and dire threats of all types made against him and against herself by I. B.; and because of the understanding that the relationship being thus established is only for the benefit of I. B., and hence is not to be interpreted under any conditions as an actual marriage; and that the said relationship involves no obligations of any kind whatsoever, now or at any time in the future, on the part of I. A. L. ''. Upon those grounds the respondent bases his claim that the marriage is not valid and the obligations which naturally flow from a marriage relationship in favor of the petitioner do not exist. He accepted the benefits of that relationship. He cannot blow hot and cold.

The other exhibit in part reads that both the petitioner and the respondent '' do hereby declare that the marriage ceremony we went through at Elkton, Maryland, is in pursuance of our agreement and contract of August 27, 1938,'' (the date of the other exhibit) '' and we therefore consider the marriage ceremony and contract performed between us at Elkton, Maryland, null and void in all its parts and implications whatsoever, ab initio.''

Contracts resulting from force or fear, or procured by coercion are unenforcible. Contracts to be valid must be entered upon voluntarily, freely.

This court partakes of the nature of a civil tribunal. In *Matter of Kane* v. *Necci* (269 N. Y. 13) the Court of Appeals of our State has definitely construed the act creating the Domestic Relations Court of the City of New York to be a court partaking of the nature of a civil forum. Under civil law contracts procured by force or fear or coercion may be set aside by courts of equity. However, it must be clear that the contract was entered into in consequence of oppression, coercion, fright or fear. An assertion that a contract was procured because of coercion is not sufficient to set aside the contract by a court of equity nor can this court disregard it. Particularly is that true in the case where the contract contemplates a marriage.

Has the marriage contract entered into between the parties before me been the result of coercion, threat, force, fraud or other taint? That question must be determined from the evidence in the case and the surrounding circumstances attending the relationship between the parties.

It has been held by our courts that a formal marriage ceremony of itself does not constitute a binding marriage if it is shown that the marriage ceremony was the result of coercion, force, fraud or some other taint.

In *Mills* v. *Mills* (186 Misc. 885, 887) it was said: " Though public policy will require the courts to preserve the sanctity of a marriage, and properly so, I don't think that public policy goes the distance of requiring this court to find that there was in this instance an abandonment by the husband of his wife, when the marriage was the result of coercion, even though the coercion might have been predicated upon a just claim ". The facts in each case must be carefully considered and the circumstances productive of the facts must be given force so that light might penetrate and the true situation ascertained.

The testimony as well as the documentary evidence submitted herein negatives the assertion that this marriage was entered upon as the result of threat or coercion.

Private individuals may not by agreement set aside the law of the land. They may not declare that which is valid in law null and void. Law is and should be the expressed will of the majority. It is binding upon those who agree as well as upon those who disagree with the effects, force and purposes of the law. Persons may not enter upon a marital relationship in conformity with the law and then dissolve that marriage in violation of law. As a matter of public policy the regulation of divorce is as important as is that of marriage. The parties hereto did sign a paper which is in evidence that they both declared their marriage to be " null and void " in all its parts and implications whatsoever " ab initio ". What they have signed and sealed after they have entered into a marriage relationship is not enforcible as a matter of law when the purport of that agreement runs counter to the established law and to the morals and mores and conventions of the society in which they live.

The respondent's claim of coercion or threat seems to be unfounded in the light of his relationship for about ten years with the petitioner subsequent to the agreements upon which he rests his claim to invalidity of the marital relationship.

This court has not power to declare a marriage valid or invalid. In the case of *Vendetti* v. *Vendetti* (31 N. Y. S. 2d 487) by way of dicta it was held that a determination by the Domestic Relations Court of the City of New York as to the validity of a marriage or the invalidity is not *res judicata,* for this court has no equity power; it may not set aside a marriage nor make an

invalid marriage valid. It, however, has jurisdiction as incident to the power to make an order for the support of a dependent, to inquire into and pass upon the validity or invalidity of a marriage. That power is implied and inherent in the jurisdiction which the Legislature has conferred upon this court. *Loomis* v. *Loomis* (288 N. Y. 222) confirms the dicta which was expressed in the *Vendetti* case (*supra*). The Court of Appeals in the *Loomis* case (*supra*) held that a determination by the Domestic Relations Court of the City of New York upon the validity or invalidity of a marriage is not *res judicata.* Only the Supreme Court of the State of New York is vested with the power to invalidate or validate a marriage. That power is given to the Supreme Court because of its equity jurisdiction.

In the course of the hearing before me it was testified by the respondent repeatedly that he had been under duress during the entire period of their marital relationship. He testified, for instance, that he had had intimate relations with her, sexually, under duress. In other words he was coerced by her to have sexual relations with her. His explanation when asked what the duress was which she exercised, was " The constant fear of committing suicide and leaving me, blackening my name at the College and blackening my name so that I would lose my employment ". The respondent before me is a teacher in some college and oddly he teaches the law of family relations. Evidently he thought himself familiar with the law when he caused the petitioner to sign the two documents above referred to. It is quite odd. He prepared the documents in anticipation of a claim by him that the marriage was entered into by him because of coercion and threat.

I find as a matter of fact and as a matter of law for all purposes that the petitioner has established by fair preponderance the allegations in her petition. She is the wife of the respondent and continues to be such until the marriage is annulled by a court of competent jurisdiction, if at all. In this case the respondent claims that there has been no marriage and the only method in which he might be relieved of his obligation as the petitioner's husband is by an annulment of the marriage. It is very questionable indeed whether he could possibly prevail. Indeed, I think he could not.

The petitioner testified that she is unable to work because of illness. The testimony of her spouse supports her statement that she is too ill to work. He testified of her extreme nervousness.

The respondent who is represented by able counsel argues that the petitioner herein is entitled to support on the basis of her likelihood to become a public charge; that she is not entitled to support according to the means of which the respondent is possessed or is able to gather.

It is incredible that a man who teaches in a college and who lectures and counsels on family relations would continue to live and have relations with a woman for a period of ten years under duress. It is inconceivable that man may by duress be compelled to have intimate relations. It is peculiar counsel which he gave to himself. The petitioner is undoubtedly a very nervous person and so is the respondent. They probably should not have entered upon any marital relationship at all, but they did, and when the respondent entered upon that relationship he assumed certain obligations, duties and responsibilities. He obligated himself to provide for his wife according to her needs or his means. The testimony does not permit a finding that her conduct was such as would justify the respondent's leaving her. His testimony is that he left her and that he had on quite a number of occasions indicated his desire to leave; there was an abandonment by the respondent of the petitioner. The law is that one must not live with his wife or she with her husband if conditions were made unbearable by the acts of one or the other parties to the relationship. I find in this case that there was an abandonment by the respondent of the petitioner, and so direct that the respondent contribute to her support according to his means.

See order filed.