FREDERICK F. SCHIBI v. RUTH M. SCHIBI

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, Js.

Argued October 7—decided November 29, 1949.

*Robert A. Wall,* for the appellant (plaintiff).

No appearance for the appellee (defendant).

BROWN, J.   This action was brought pursuant to General Statutes, § 7341, for the annulment of a marriage which the plaintiff claims never existed, for lack of mutual consent.   See 3 Nelson, Divorce & Annulment (2d Ed.) § 31.01.   The court rendered judgment for the defendant.   The plaintiff has appealed and there is no appearance on behalf of the defendant. The facts found by the court are undisputed before us. The plaintiff has resided in Connecticut for many years and in September, 1946, became acquainted with the defendant, who was then staying in New Hartford. Late in 1946 she told the plaintiff that she was pregnant by him.   In response to a Torrington attorney's letter, the parties met in his office and agreed that there would be a marriage ceremony in New York and that the defendant would apply for an annulment of the marriage six weeks after the ceremony.   The intention of the parties was to give a name to the unborn child.   The plaintiff did not intend that they would live together, or cohabit, or assume the relationship of husband and wife after the ceremony, but on the contrary intended to live separate and apart from the defendant, which intentions were known to her.

Thereafter, the parties consulted an attorney in New York City and the defendant retained him to proceed with the annulment after the marriage ceremony. Subsequently, on January 26, 1947, the parties went through a marriage ceremony in New York City pursuant to the plan agreed upon.   Following this, the plaintiff returned to New Hartford.   The defendant remained in New York City for a time, as she was em-

ployed there, and later returned to New Hartford to live. The parties have not cohabited since the marriage. A child, Frederick F. Schibi, Jr., was born to the defendant on July 1, 1947, in Winsted. The plaintiff makes no claim that he is not the father of the child. He has paid the expenses incident to the child's birth, contributed to his support and expressed an intention to continue to do so. The defendant refused to bring the annulment proceeding and informed the New York attorney not to proceed with it. The plaintiff's sole claim was that the marriage should be annulled because it lacked the element of mutual consent of the parties, having been "ostensible" and entered into only to give the unborn child a name. The court concluded that the parties were legally married and that it would be against public policy to find the marriage void.

The law is clear that mutual consent is essential to a valid marriage. *Allen* v. *Allen,* 73 Conn. 54, 55, 46 A. 242; 1 Bishop, Marriage, Divorce & Separation § 317; Keezer, Marriage & Divorce (3d Ed.) § 2. It is unquestioned that mutual consent by these parties was requisite to validity under the law of New York, where the ceremony was performed, and that without it the marriage was void and the Superior Court had jurisdiction so to decree. *Davis* v. *Davis,* 119 Conn. 194, 197, 202, 175 A. 574. In his complaint, the plaintiff alleges as the only basis for relief that at the time of the ceremony there was neither consent nor intent to incur the obligations of a marriage contract, and his prayers for relief are that the purported marriage be annulled and declared void. The sole question presented to the court for determination was whether the marriage was void because there was no mutual consent of the parties. That there was such mutual consent is implicit in the court's conclusion that the parties were legally married. Whether this conclusion is supported

by the subordinate facts is the question decisive of the appeal.

In the trial court there was no appearance by the defendant, and the only evidence was the testimony of the plaintiff himself, which was not subjected to cross-examination. Since the case was uncontested, it was particularly incumbent upon the trial court to satisfy itself fully that the plaintiff had sustained the burden of proving the lack of mutual consent which he claimed vitiated the marriage. See *Felton* v. *Felton,* 123 Conn. 564, 567, 196 A. 791. In so far as the consent and intent of the defendant to enter into a binding marriage are concerned, the court's conclusion cannot be disturbed. In determining whether the same holds true as to the plaintiff, mention may be made of the court's finding that he did not intend to live and cohabit with the defendant or to enter into the relationship of husband and wife with her after the marriage, but on the contrary intended to live separate and apart from her and that they did not in fact cohabit thereafter. While it is true that, in passing upon a petition to annul a marriage, courts may well take into consideration whether there has been cohabitation or not, the fact that there has been none subsequent to the marriage ceremony is not of controlling importance, and particularly is this true where there has been prior sexual intercourse. *Hanson* v. *Hanson,* 287 Mass. 154, 159, 191 N. E. 673; *Mills* v. *Mills,* 186 Misc. 885, 887, 62 N. Y. S. 2d 344; 3 Nelson, Divorce & Annulment (2d Ed.) § 31.06. The fact that, in accord with the plaintiff's intent, the parties did not cohabit after the ceremony, while possibly evidential of a lack of intent on his part to consent to and enter into a binding marriage with the defendant, did not require a finding to that effect. This necessarily follows from the fact, alleged in the plaintiff's complaint and found

by the court upon his request, that prior to the marriage he and the defendant agreed that she would apply for an annulment "six weeks after the ceremony." Since that was the situation, it is apparent that regardless of any specific intent which the plaintiff had with regard to his future cohabitation with the defendant, in entering into the marriage ceremony as he did he was contemplating the creation of the status of marriage for at least the limited period and purpose stated. He must be held charged with the legal implications arising from that status; *Allen* v. *Allen,* 73 Conn. 54, 55, 46 A. 242; such, for example, as the rights of survivorship in the event he or the defendant died during that interval. In principle, it would make no difference whether the status so created by the terms of the agreement was to continue for six weeks or six years. It is of even greater significance that the parties married "to give the child a name," that is, to give it the status incident to a legitimate birth. To annul the marriage would render it void ab initio and so defeat this very purpose. The court was amply warranted in its conclusion that the consent and intent essential to afford the mutuality of a valid contract of marriage existed upon the part of the plaintiff. *Hanson* v. *Hanson,* supra.

The plaintiff has devoted a substantial part of his brief to a discussion of the defendant's promise to seek an annulment as being a claimed misrepresentation affording basis for a decree in the present action on the ground of fraud. This finds full answer in that no such ground of relief was included in the complaint. The court reached the further conclusion, fortified by the plaintiff's failure to claim an order or judgment of any nature with relation to his child, that to decree the marriage void would be against public policy. This was undoubtedly sound. See *Dennis* v. *Dennis,* 68

Conn. 186, 197, 36 A. 34; *Allen* v. *Allen,* 73 Conn. 54, 55, 46 A. 242. It was not, however, essentially involved in the judgment upon this record. The result reached is in accord with this general principle relative to the effect of prenuptial agreements: "Once a marriage has been properly solemnized and the obligations of married life undertaken, its validity cannot be affected by an antenuptial agreement not to live together, nor by an agreement previously entered into that the marriage should not be valid and binding, nor because one or even both of the parties did not intend it to be a permanent relation." Keczer, Marriage & Divorce (3d Ed.) § 3. That prenuptial agreements designed to negative the effect of a marriage are generally void as against public policy is well exemplified by these authorities: *Popham* v. *Duncan,* 87 Colo. 149, 285 P. 757, 70 A. L. R. 824, note 826; *French* v. *Mc-Anarney,* 290 Mass. 544, 546, 195 N. E. 714; *Cumming* v. *Cumming,* 127 Va. 16, 29, 102 S. E. 572; note, 98 A. L. R. 533.

There is no error.

In this opinion the other judges concurred.