[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue to be determined is whether the marriage of the parties is valid, void or voidable. The action before the court is a paternity petition initiated by State of Connecticut on July 14, 2001 pursuant to General Statutes § 46b-162. The petition alleges that the defendant is the father of a child, Ahmed Hassan, born July 23, 1996 to the plaintiff mother. The defendant claims he is married to the plaintiff. If this were so, the court would have no subject matter jurisdiction, since a paternity petition does not lie where the parties are married to each other.
The plaintiff states that in 1995 m Connecticut, she and the defendant were joined in marriage in an Islamic religious ceremony. The plaintiff was fifteen years old at the time. She does not recall any clergyman officiating at the wedding. She recalls her family and the groom's family in attendance. She does not recall any papers being signed. She personally believes the marriage invalid because of her age at the time, and because she and the defendant did not live together after the marriage. She states that the marriage is considered valid in the Muslim faith.
The defendant claims that there was a formal ceremony in 1996 officiated by an Imam. He claims formal papers were prepared in Arabic by CT Page 13468-iw the Imam and that he has the document in his possession. They did not obtain a marriage license. The Imam is a resident of Pakistan whence he returned sometime afterward. He believes that he is married to the plaintiff but that the marriage should be voided because it was never "consummated".
Although the parties differ on the details, it is clear that there was some form of wedding ceremony which they both recognize as valid under Islamic law. They also agree that at least some of the required formalities of Connecticut law were absent. The defendant does not deny the plaintiff's claim that there were acts of sexual intercourse necessary to conceive a child. They are also in agreement that after the wedding ceremony they never resided together as an intact family. The parties apparently both prefer that the court simply declare the marriage void and proceed with the paternity petition.
A review of Connecticut law suggests that it is not that simple. Analysis must start with a review of the pertinent statutes. The requirements for a legally valid marriage in this State are to be found in the provisions of our statutes. "At least since Maynard v. Hill,125 U.S. 190, 210-14, 8 S.Ct. 723, 31 L.Ed. 654 (1888), it has been clear that the legislature has plenary power to determine the circumstances under which a marital relationship is created and terminated. Morgan v.Morgan, 103 Conn. 189, 195, 130 A. 254 (1925); Starr v. Pease, 8 Conn. 541,54-647 (1831)." Joy v. Joy, 178 Conn. 254, 256, 423 A.2d 895 (1979). Although a marital relationship is in its origins contractual, depending upon the consent of the parties, "a contract of marriage is sui generis. It is simply introductory to the creation of a status, and what that status is the law determines)" Gould v. Gould, 78 Conn. 242, 245, 61 A. 604
(1905); Hames v. Hames, 163 Conn. 588, 592-93, 316 A.2d 379 (1972);Peristein v. Perlstein, 152 Conn. 152, 156, 204 A.2d 909 (1964).
"In determining the status of a contested marriage, we are bound therefore to examine with care the relevant legislative enactments that determine its validity. Such an examination must be guided by the understanding that some legislative commandments, particularly those affecting the validity of a marriage, are directory rather than mandatory. `The policy of the law is strongly opposed to regarding an attempted marriage . . . entered into in good faith, believed by one or both of the parties to be legal, and followed by cohabitation, to be void.' Hames v. Hames, supra, [163 Conn. ] 599." Carabetta v. Carabetta,182 Conn. 344, 346-47, 438 A.2d 109 (1980).
There are several aspects of this marriage that may impact upon its CT Page 13468-ix validity. Was the officiant legally qualified to solemnize a marriage in Connecticut? Was the marriage invalid because of the tender age of the plaintiff? Does the absence of a marriage license render the marriage void? Is the marriage voided by the claimed failure to "consummate" the marriage after the ceremony? Finally, is the marriage void or voidable because the parties did not comport themselves as a married family after the ceremony?
 I COMMON LAW MARRIAGE
Common-law marriages are not valid in Connecticut. State ex rel. Felsonv. Allen, 129 Conn. 427, 432, 29 A.2d 306 (1942); see also McAnerney v.McAnerney, 165 Conn. 277, 285, 334 A.2d 437 (1973). Our statute has been construed to require the marriage contract to be entered into before authorized persons and with certain formalities. Dennis v. Dennis,68 Conn. 186, 196, 36 A. 34 (1896). "In this jurisdiction, common law marriages are not accorded validity. . . . The rights and obligations that attend a valid marriage simply do not arise where the parties choose to cohabit outside. the marital relationship. " Collier v. City ofMilford, 206 Conn. 242, 248, 537 A.2d 474 (1988); Boland v. Catalano,202 Conn. 333, 339, 521 A.2d 142 (1987). The parties do not claim that a common-law marriage exists.
 II VALIDITY OF THE WEDDING CEREMONY A Authority of the Officiant
In Connecticut, "all ordained or licensed clergymen, belonging to this state or any other state, so long as they continue in the work of the ministry" are authorized to join persons in marriage. General Statutes § 46b-22[1]. "A clergyman in the administration of marriage is a public civil officer, and in relation to this subject, is not at all distinguished from a judge . . . or a justice of the peace, in the performance of the same duty." Goshen v. Stonington, 4 Conn. 209, 218
(1822)[2]. hi the present case, the defendant claims that the wedding was officiated by an Imam[3]. The plaintiff denies this. Neither party has yet presented affirmative evidence as to whether the Imam, if present, was "ordained" or recognized under Muslim law. An evidentiary CT Page 13468-iy hearing would be required to address this issue. It is of no consequence that the Imam hails from Pakistan. Our statute clearly recognizes marriages performed by clergy regardless of their origin or religion. If the Imam is recognized under Islamic law then he is entitled under our statute to solemnize marriages.
 B Marriage According to the Usage of a Religious Denomination
Furthermore, "[a]ll marriages solemnized according to the forms and usages of any religious denomination in this state . . . are valid." General Statutes § 46b-22[4]. Thus even if the Imam's authority is not recognized or no Imam was actually present, the marriage is not void if it was solemnized in a manner recognized by Islamic law. Both parties believe it was.
"Our statutory scheme specifies no precise form for the celebration of marriage; nor does it explicitly require that the parties declare that they take one another as husband and wife. . . . No requirement is made concerning witnesses, but, like consent, the physical presence of the parties before an official is an implicit requirement to the performance of a marriage in this state. Compare, e.g., Mich. Comp. Laws 551-9; see Howery, `Marriage by Proxy and Other Informal Marriages', 13 Kan. City L.Rev. 48, 58; note, 55 Yale L.J. 735, 738-48. Swift, in 1822, in discussing the predecessor statutes to our present 46-3, remarked: The law has not pointed out any mode in which marriages shall be celebrated, but has left it to the common custom and practice of the country. Any form of words which explicitly constitute a contract and engagement from the parties to each other, and published in the presence of, and by the officer appointed by the Statute, will be a valid marriage.' 1 Swift, Digest, p. 20." Hames v. Hames, 163 Conn. 588, 596, 316 A.2d 379 (1972).
In Hames, the parties had been previously married and divorced. They decided to remarry each other and obtained a marriage license. However, they did not solemnize the second marriage. Instead, the husband simply brought the license to a priest, who sigued off on the form. The court held that in the absence of some ceremony involving the presence of both parties and some official, the marriage was invalid. However, the decision suggests that court intervention is still required and that a determination that the marriage is invalid does not necessarily mean that it was void ab initio, and even if void, that it is not so in the sense of a nullity requiring no act to sever. CT Page 13468-iz
"Having determined that the purported marriage in 1960 was invalid, we turn next to decide the legal effects of that invalidity. It has long been settled that unless a statute expressly declares a marriage to be void, as in the case of an incestuous marriage (General Statutes 46-1), or one attempted to be celebrated by an unauthorized person (General Statutes 46-3), deficiencies will render the marriage dissoluble rather than void. Vendetto v. Vendetto, 115 Conn. 303, 305, 161 A. 392 [1932];Gould v. Gould, 78 Conn. 242, 61 A. 604 [1905]. Statutory deficiencies are, of course, to be distinguished from substantive defects such as lack of the consent which, even at common law, is deemed essential to forming the relationship. Davis v. Davis, 119 Conn. 194, 175 A. 574 [1934]; Allenv. Allen, 73 Conn. 54, 46 A. 242 [1900]. Even a bigamous marriage may carry sufficient legal effect to sustain an action for annulment.Perlstein v. Perlstein, 152 Conn. 152, 157-58, 204 A.2d 909 [1964]. The policy of the law is strongly opposed to regarding an attempted marriage such as that in this case, entered into in good faith, believed by one or both of the parties to be legal, and followed by cohabitation, to be void. Keezer, Marriage and Divorce 61.
"Applying these principles, we hold that the purported marriage, deficient for want of due solemnization, was voidable rather than void, insofar as the latter term may imply an absolute nullity. This determination accords with the policies expressed in General Statutes 46-28[5], under which the plaintiff may be entitled to an annulment and to relief normally incidental to a divorce. Perlstein v. Perlstein,
supra; see also Stapleberg v. Stapleberg, 77 Conn. 31, 35, 58 A. 233
[1904]." Hames v. Hames, supra, 163 Conn. 598-99.
In the present case, an evidentiary hearing may be necessary to determine whether the marriage was solemnized in accordance with Islamic law. Again, it is noted that both parties believe that it was. It will be necessary to include as evidence the marriage contract testified to by the defendant. To expedite matters, the court orders that the defendant provide an authenticated copy of the document to the clerk of the Family Support Division. The clerk is to mark the authenticated copy for identification only. The clerk shall then make a photocopy and forward the same to the office of the court interpreter with a request that a written translation from the Arabic be provided. The authenticated copy plus the written translation are to be sealed in an evidence envelope and place in the file, to be opened at the direction of the court. CT Page 13468-ja
 III AGE OF CONSENT
A marriage license may not be issued to any person under sixteen years of age without the endorsement of a probate judge. "(a) No license may be issued to any applicant under sixteen years of age, unless the judge of probate for the district in which the minor resides endorses his written consent on the license." General Statutes § 46b-30[6]. The testimony of both parties suggests that the plaintiff's parents approved of the marriage. The defendant suggests that she was over sixteen at the time. If so, that would be sufficient. However, the plaintiff claims she was fifteen. Thus, endorsement of a probate judge would be required and there has been no evidence that such endorsement was sought or granted.
The statute prohibits the granting of a marriage license under certain circumstances that may be applicable in this case. The statute does not, however, declare such a marriage void. It is the practice of our State, as indicated by its legislation, not to treat as void a marriage contracted in violation of a statutory command, for which violation the statute imposes a penalty, unless the statute imposing the penalty contains a specific clause of nullity. Marriage is a status fundamental in its nature and essential to organized society, to which the State is also a party; Steele v. Steele, 35 Conn. 48, 53 (1868); Seeley's Appeal,56 Conn. 202, 205 (1888); see also Gould v. Gould, 78 Conn. 242, 61 A. 604
(1905)[7].
In Mannaro v. Mannaro, 9 Conn. Sup. 100 (1941) the parties married in New Jersey. The wife was under the age of sixteen. The court held that the wife "is entitled to a decree of annulment which takes effect on the date of its entry, the result of which is that this marriage, not being void, but voidable at the time, was valid until a decree of nullity is entered and therefore legitimacy of children born of such a marriage is not affected." Id., 101.
 IV FAILURE TO OBTAIN A MARRIAGE LICENSE
It is not disputed that the parties did not obtain a marriage license. Connecticut law requires a marriage license issued by the registrar of the town in which the marriage is celebrated. "No persons may be joined in marriage in this state until both have complied with the provisions of CT Page 13468-jb sections 46b-24 to 46b-27, inclusive, and 46b-29 to 46b-33, inclusive, and have been issued a license by the registrar for the town in which the marriage is to be celebrated, which bears the certification of the registrar that the persons named therein have complied with the provisions of said sections." General Statutes § 46b-24. It is the license that authorizes the officiant to join the two particular parties to the marriage. The absence of a license can subject-the officiant to a fine. Id.[8]
Once again, although the statute prohibits the celebration of a marriage without a license, the penalty section does not declare the marriage void. It merely imposes a penalty on the errant officiant.
Our Supreme Court has had occasion to address the effect of a religious wedding ceremony conducted in the absence of a marriage license. InCarabetta v. Carabetta, 182 Conn. 344, 438 A.2d 109 (1980) the parties exchanged marital vows before a priest according to the rite of the Roman Catholic Church, although they had failed to obtain a marriage license. Thereafter they had four children, and essentially conducted themselves as a married couple. Subsequently, the plaintiff wife filed an action for dissolution of the marriage. The defendant husband filed a motion to dismiss. The trial court, Reynolds, J., determined that the parties had never been legally married and thereupon granted the defendant's motion to dismiss for lack of jurisdiction over the subject matter. The plaintiff appealed.
The Supreme Court held that "[s]ince the marriage that the trial court was asked to dissolve was not void, the trial court erred in granting the motion to dismiss for lack of jurisdiction over the subject matter." Id., 351. The court declined to rule on whether the marriage was voidable, hence subject to an action for annulment, or valid and properly an action for dissolution because "that question should have been raised by a motion to strike . . . not by a motion to dismiss for lack of subject matter jurisdiction. " Id.
"In sum, we conclude that the legislature's failure expressly to characterize as void's a marriage properly celebrated without a license means that such a marriage is not invalid." Id., 349.
 V FAILURE TO CONSUMMATE
The defendant makes much ado of his claim that the marriage was CT Page 13468-jc never consummated. The plaintiff does not dispute that they never resided together after the wedding. She does claim that she was pregnant with the defendant's child prior to the ceremony.
"Cohabitation does not make a marriage. . . ." State v. Schweitzer,57 Conn. 532, 538, 18 A. 787 (1889). See also Kowalczyk v. Kleszczynski,152 Conn. 575, 577, 210 A.2d 444 (1965) (cohabitation is evidence that the parties have been validly married but does not in itself constitute a marriage). There is no Connecticut law supporting the proposition that failing to cohabit after a marriage renders the marriage void ab initio.
In Bernstein v. Bernstein, 25 Conn. Sup. 239, 201 A.2d 660 (1964), the court did rely in part on a failure to consummate as grounds to annul the marriage. The defendant wife formed an intention prior to the wedding ceremony neither to consummate the marriage nor to live together as husband and wife. The court held that her concealed intentions went to the essence of the marriage contract. The conduct of the wife suggested that she had not truly consented to the marriage and had never intended to assume the duties of the marital relationship. Accordingly., the court granted an annulment.
Our Supreme Court has stated: "While it is true that, in passing upon a petition to annul a marriage, courts may well take into consideration whether there has been cohabitation or not, the fact that there has been none subsequent to the marriage ceremony is not of controlling importance, and particularly is this true where there has been prior sexual intercourse." Schibi v. Schibi, 136 Conn. 196, 199, 69 A.2d 831
(1949). In Schibi, the trial court found that the parties married "to give a name to the unborn child." Id., 197. Nonetheless, the court found that the parties were legally married and refused to grant an annulment. The Supreme Court affirmed. See also Hannibal v. Hannibal,23 Conn. Sup. 201, 179 A.2d 836 (1962); McCurry v. McCurry,7 Conn. Sup. 197, affirmed 126 Conn. 175, 10 A.2d 365 (1939).
In the present case, the plaintiff claims she was pregnant with the defendant's child, hence the marriage had been "consummated" prior to the ceremony. As to the issue of consummation, the fact situation is quite similar to Schibi. The lack of consummation surely is not sufficient grounds for the marriage to be declared void and it seems unlikely, givenSchibi, that it is even grounds to find the marriage voidable and consequently subject to annulment. CT Page 13468-jd
 VI NECESSITY FOR COURT ACTION
"Marriage is that ceremony or process by which the relationship of husband and wife is constituted. The consent of the parties is everywhere deemed an essential condition to the forming of this relation. To this extent it is a contract. But when the relation is constituted then all its incidents, as well as the rights and duties of the parties resulting from the relation, are absolutely fixed by law. Hence, after a marriage is entered into the relation becomes a status, and is no longer one resting merely on contract." Allen v. Allen, 73 Conn. 54, 55, 46 A. 242
(1900).
"Where parties have entered into a valid marriage, it may be dissolved only where one of the grounds of divorce specified in the statutes is present and only in accordance with the procedure established by the statutes. Dennis v. Dennis, 68 Conn. 186, 197, 36 A. 34 [1896]. All the grounds of divorce specified, except fraudulent contract, are of such a nature that they can come into existence only after the marriage. While fraudulent conduct of a certain kind will render a marriage voidable, such fraud differs from that which vitiates ordinary contracts in that the party defrauded may not at his own election avoid the marriage, but it is held to be voidable only by a decree of the court. Guilford v.Oxford, 9 Conn. 321 [1822]; Gould v. Gould, 78 Conn. 242, 247, 61 A. 604
[1905]. Divorce, therefore, is a means provided for the dissolution of a marriage which is valid until the court has decreed otherwise. But in addition to the right given to the Superior Court to grant divorces, the statutes contain a broad provision that "whenever from any cause any marriage shall be void, the Superior Court may, upon complaint, pass a decree declaring such marriage void.' General Statutes, § 5188".Davis v. Davis, 119 Conn. 194, 196-97, 175 A. 574 (1934).
The Davis case represents the clearest instance of the court considering a marriage void ab initio. Nonetheless the court held that it's intervention was appropriate in lieu of the parties simply declaring the marriage void. The circumstances of that case were set forth in the opinion:
"The plaintiff and the defendant went on an automobile ride with several young people. It was a joyous occasion and to add to the excitement the defendant dared the plaintiff to marry her. The plaintiff accepted the dare, a license for the marriage was procured in New York CT Page 13468-je State and the ceremony was at once performed by a justice of the peace there. Neither party intended at the time to enter into the marriage status. They returned to their respective homes after the ceremony and have never cohabited. Each was nineteen years old at the time. They were at the time of the marriage and still are residents of this State." Id., 194-95.
"The essential claim of the plaintiff is that the parties never were in fact married, despite the ceremony which was performed, because of the lack of real consent on the part of either to enter into that relationship. Both parties were properly before the court. The power, which the court was called upon to exercise, was not to nullify a marriage that had in fact taken place, but to declare void a purported marriage, which, if the plaintiff's contention is correct, never did come into existence. We have no doubt that, if sufficient ground existed, the trial court had jurisdiction to pass such a decree." Id. 197 (citations omitted).
In the end, the Supreme Court cautiously endorsed the granting of a decree holding the marriage to be void. "We would be reluctant to seem to countenance conduct which treats so lightly one of the most fundamental of human relationships, both as regards the individuals immediately concerned and the interests of society. But where it clearly appears that two young people, by their foolish and unconsidered conduct, have gotten themselves into such a situation as arises out of the performance of a marriage ceremony between them without the intent on the part of either to enter into the marriage relationship, and cohabitation has not followed, we have no doubt that it is in the public interest legally to declare them to be unmarried rather than to leave them under the shadow of a relationship which is but an empty form. A petition for the annulment of a marriage on this ground requires of the court hearing it great caution and demands clear proof. . . . But if the court is satisfied that the petitioner has fairly proven a situation within the principle we have stated, it should by its decree declare the marriage to be void." Id., 203-04.
The cases are not unanimous that a court decree is necessary to invalidate a void marriage. A few of our cases come to a different conclusion. In Sarantos v. Sarantos, 18 Conn. Sup. 472, 473 (1953) the defendant wife was admittedly married to another man at the time of her purported marriage to the plaintiff Although the trial court granted the annulment petition, the memorandum of decision suggests that the formality was unnecessary. "lt follows that the plaintiff is entitled to an annulment since the purported marriage was a nullity. It was not CT Page 13468-jf merely voidable. Mannaro v. Mannaro, 9 Conn. Sup. 100, 101 [1941]. It was absolutely void. It needed no decree of the court to make it void."Sarantos v. Sarantos, supra, 18 Conn. Sup. 473. However, in nearly the same factual circumstances, in Anderson v. Anderson, 27 Conn. Sup. 342,238 A.2d 45 (1967) the trial court, Grillo, J., reached the opposite conclusion, finding that even though the marriage in question was void ab initio, public policy favors the declaration of nullity of a void marriage by a court and hence granted the annulment of the bigamous marriage in question. Id., 346-47.
In State v. Nosik, 245 Conn. 196, 715 A.2d 673 (1998), the defendant posed a claimed valid marriage as a defense against a larceny charge. The larceny involved health insurance claims made on behalf of the defendant's purported husband. The defendant claimed to have married the man in both a civil ceremony in Yugoslavia and a religious ceremony in New Jersey. The trial court found that the defendant had failed to prove the civil ceremony. In fact, the State established that both parties were in the United States at the time of the purported civil ceremony. The court also found that the religious ceremony was conducted without a marriage license. The court found that the ceremony did not constitute a marriage. Rather, the defendant had participated in a purported ceremony. intended to commemorate a marriage that had allegedly already occurred. Further, the court found that the defendant did not have the good faith intention of entering into a valid legal marriage. The court also found many occasions where the defendant or her purported spouse declared themselves single or denied the marriage. Based on the facts the court found that there had been no marriage. The marriage was held not to exist without the requirement of any court action; thus in essence, void ab initio.
The Supreme Court affirmed. In doing so, the court distinguished the facts from Carabetta. The court suggested that a "legally imperfect marriage" would stand if the parties participated in a religious rite with the good faith intention of entering into a valid marriage, and thereafter manifested the belief that they were in fact married. The facts elicited thus far in the present case suggest that the Hassans meet the two-pronged test. Their situation resembles Carabetta far closer than Nosik.
Prudence and a comprehensive reading of the statutes and cases dictate that that it be presumed that the status of marriage has been achieved by the present parties even if ultimately found voidable or even void. The reasons are succinctly stated in Justice Bogdanski's concurring opinion in Carabetta. "Marriage is strongly favored by the law; Sanders v.Sanders, 52 Ariz. 156, 79 P.2d 523 (1938); Dunham v. Dunham, 162 Ill. 589, CT Page 13468-jg 44 N.E. 841 (1896); Kelley v. Kelley, 51 R.I. 173, 153 A. 314 (1931); annot., 74 A.L.R. 138; and existing marriages are presumed to be valid and that presumption has been described by the courts as very strong. SyJoc Lieng v. Sy Quia, 228 U.S. 335, 33 S.Ct. 514, 57 L.Ed. 862 (1913); see annots., 77 A.L.R. 729; 34 A.L.R. 464, 470. It is a presumption that grows stronger with the passage of time, is especially strong when the legitimacy of children is involved, and can only be negated by disproving every reasonable possibility that it is valid. Reed v. Reed, 202 Ga. 508,43 S.E.2d 539 (1947)." Carabetta v. Carabetta, supra, 182 Conn. 352-53.
"A marriage ceremony, especially if apparently legally performed, gives rise to a presumptively valid status of marriage which persists unless and until it is overthrown by evidence in an appropriate judicial proceeding. No mere claim of bigamy, whether made in a pleading or elsewhere, would establish that a marriage was bigamous. See cases such as [Town of] Roxbury v. [Town of] Bridgewater, 85 Conn. 196, 202, 82 A. 193
[1912]. Seldom, if ever, would a party to a bigamous marriage, in the face of the presumption of its validity, feel free to treat the marriage as a nullity without a decree of annulment. Nor do we believe any attorney would advise such a course of conduct. The state's concern m the marriage status of its domiciliaries imperatively demands that the invalidity of the purported marriage be judicially determined before that invalidity be accepted. See Williams v. North Carolina, [325 U.S. 226,298, 65 S.Ct. 1092, 89 L.Ed. 1577, reh. denied, 325 U.S. 895,65 S.Ct. 1560, 89 L.Ed. 2006 (1945)]; 4 Am.Jur.2d, Annulment of Marriage, 2. if judicial action is needed, it must be because, in some degree at least, a status of marriage exists. If it does exist, then to that extent at least it is a res, as far as there is any res in a status action, and must be treated as such. Even theoretically, it is inaccurate to state that in this case there is no `res' during the pendency of the annulment action. "Perlstein v. Perlstein, 152 Conn. 152, 157, 204 A.2d 909 (1964). See alsoStapleberg v. Stapleberg, 77 Conn. 31, 58 A. 233 (1904) (judgment declaring void an incestuous marriage and ordering alimony); Parker v.Parker, 29 Conn. Sup. 41, 270 A.2d 94 (1970) (subsequent marriage by a person whose existing marriage had not been absolutely severed declared void); Reinstein v. Meriden Trust Safe Deposit Co., 27 Conn. Sup. 151,232 A.2d 505 (1967) (action for declaratory judgment to determine status of purported marriage).
"Our annulment statute itself [then General Statutes § 46-28], although referring to `void or voidable' marriages, provides that the court may grant alimony, and custody and support orders for any minor child, as in the case of divorce. Public Acts 1963, No. 105, amended the section [now General Statutes § 46b-60[9]] by adding a sentence CT Page 13468-jh declaring that `[t]he issue of any void or voidable marriage shall be deemed legitimate.' These provisions are irreconcilable with the theory that even a marriage claimed to be void is, or upon the rendition of a decree of annulment retroactively becomes, an absolute nullity ab initio so that nothing in the way of a status or res ever flowed from the marriage. See Gaines v. Jacobsen, supra [308 N.Y. 218, 225,124 N.E.2d 290]." Perlstein v. Perlstein, supra, 152 Conn. 152, 159.
The inescapable conclusion is that even though flawed in a number of respects, the Hassan ceremony established enough of a status of marriage between the parties as to require a court to disestablish it. The procedural path to place the matter before the proper court, as with all other aspects of this case, is complicated.
 VII JURISDICTIONAL AND PRECEDURAL CONSIDERATIONS
It is clear that this court does not have jurisdiction to annul the marriage of these parties, nor to issue a declaratory judgment voiding it. The Family Support Magistrate Division is a statutory court and is limited to act within the statutory powers granted to it. Reynolds v. Allicock, 15 S.M.D. ___, 2001 Ct. Sup. 2456 (2001); Dalley v. Wineglass, 11 S.M.D. 1, 26 (1997); Holden v. Skinner, 7 S.M.D. 19, 24 (1993). Jorgensen v.Jorgensen, 1 S.M.D. 34 (1987); see also Conn. Constitution, ArticleFifth; Article XX of Amendments; Article XXV of Amendments; General Statutes § 46b-231 (m); Brown v. O'Connell, 36 Conn. 432 (1870); Bettsv. Town of New Hartford, 25 Conn. 180 (1856); Osborn v. StamfordZoning Board of Appeals, 11 Conn. Sup. 489 (1943).
Where an action "depends upon statutory authority noncompliance with the statutory requirements . . . implicates subject matter jurisdiction and renders a nonconforming [action] subject to dismissal." Tolly v.Department of Human Resources, 225 Conn. 13, 27, 621 A.2d 719 (1993);McQuillan v. Department of Liquor Control, 216 Conn. 667, 670, 583 A.2d 633
(1990); Tarnopol v. Connecticut Sitting Council, 212 Conn. 157, 163,561 A.2d 931 (1989); Hillcroft Partners v. Commission on Human Rights Opportunities, 205 Conn. 324, 326-27, 533 A.2d 852 (1987); ChestnutRealty, Inc. v. Commission on Human Rights Opportunities, 201 Conn. 350,356, 514 A.2d 749 (1986); Basilicato v. Department of Public UtilityControl, 197 Conn. 320, 324, 497 A.2d 48 (1985); Exchange BuffetCorporation v. Rogers, 139 Conn. 374, 376, 94 A.2d 22 (1952); Collins v.Beaver, 14 S.M.D. 432, 435, 2000 Ct. Sup. 16290 (2000); Greenwood v.Velsor, 7 S.M.D. 65, 71, 13 Conn.Fam.L.J. 15 (1993). CT Page 13468-ji
Normally, therefore, this action would be subject to dismissal. However, while it is manifest that this division does not have jurisdiction to grant the relief appropriate in this case, the Superior Court does. The interests of these parties and of the child alleged to be issue of this relationship would be ill-served by a simple dismissal leaving all to their own devices. There is an available alternative in this case. The Family Support Magistrate may, on its own motion, refer this case to the Superior Court[10].
Additional pleadings will undoubtedly be required to frame the issues for the Superior Court[11]. The cases suggest that the Superior Court may be asked to dissolve the marriage, annul the marriage, or issue a declaratory judgment that the parties were never married, or that any marriage was void. Any or all of these options can be requested in the alternative. The court can also conduct such evidential hearing as is necessary[12]. Once the Superior Court establishes the nature of the relief to be granted, it has clear authority under General Statutes § 46b-60 to address child support inter alia.
The court believes that this procedure is superior to the only other remaining option in this division: the State amending its petition to a support petition. The problem with this alternative is that inevitably the parties and the court would relapse to the issue of the status of the parties' marriage. This division has no greater authority to decide that question in the context of this case under the guise of a support petition than it does in the present milieu.
 VIII CONCLUSION
Accordingly, this court, on its own motion, hereby refers this case to the Superior Court[13]. Automatic orders provided in Practice Book § 25-5 are issued and the clerk is instructed to provide a copy of the same to each party. The defendant shall provide an authenticated copy of the marriage contract as ordered at the conclusion of part II B of this decision. The motion for genetic tests is marked over to be determined by the Superior Court.
The parties are each given leave to amend their pleadings or file supplemental pleadings consistent with this decision within thirty days[14]. The clerk is directed to docket this case for hearing before the Superior Court[15] not less than thirty CT Page 13468-jj nor more than sixty days from the filing date of this decision and to assign a case management date as provided by Practice Book § 25-5
(a)(4) and § 25-50.
BY THE COURT
Harris T. Lifshitz
Family Support Magistrate